## Richardson, &c, *vs* Linney, &c.

CHANCERY.

APPEAL FROM THE CLARKE CIRCUIT.

*Case* 139.

*Guardian and ward. Practice in chancery.*

JUDGE BRECK delivered the opinion of the Court.—Judge SIMPSON did not sit in this case.

*September* 25.

Case stated in the bill.

On the 24th February, 1840, Richardson was appointed the statutory guardian of Oliver Perry Linney. On the 22d February a contract had been made between Richardson and Linney, by which the latter sold and transferred to the former, a slave, and also sundry claims and money, and in a word, all his estate, in consideration of $200, to be paid shortly thereafter, and $1,000 when the latter should become of age and confirm the contract.

On the 8th January, 1841, this contract was confirmed, or rather Linney executed a transfer to Richardson of some property in consideration of $1,358, and in same instrument he acknowledged himself to be twenty one years of age, and that a settlement had been that day made between him and his said guardian, and that he had received in full, all the money and property which he was entitled to claim from him.

On the 8th day of January, 1842, Linney filed this bill in chancery against Richardson and his sureties in his guardian bond, and also against Turpin, a former guardian, and his sureties, of whom his last guardian, Richardson was one. He alledges that he was not twenty one years of age till the 4th January, 1842; that Richardson had fraudulently obtained from him a transfer of his es-

RICHARDSON, &c. *vs* LINNEY. tate while an infant, and with a knowledge of the fact of his infancy; that he had paid him a very inadequate consideration, his estate being of the value of three or four thousand dollars. He prays that the transfer to Richardson and the pretended settlement may be set aside and disregarded, and that he and also Turpin, may be compelled to settle up their accounts as guardians, and to pay and deliver to him all the money and property in their hands, to which he may be entitled.

Answer of Turpin and Richardson, and cross bill of the latter ageainst compts. and Turpin.— Makes H. Daniel also a party. Charging champerty.

Turpin, who was a brother-in-law, admits that Linney was not twenty one till the 4th January, 1842; Richardson answers that he had reluctantly consented to become the guardian of complainant, and that he had done it with an assurance from him and Turpin, that he would be of age on the 4th January, 1841. That he had settled with him upon that assurance; that the arrangement was not made with a view to a speculation, and that he was willing, if what he had paid was refunded to him, to rescind the contract made with him. He insists that the complainant was, however, of age at the time he had represented, and if he was not, that he had been guilty of the grossest fraud and imposition. He made his answer a cross bill against the complainant and Turpin, and also made Henry Daniel a defendant, the counsel who had brought the suit, and who, as he alledged, by some champertous contract, was to have the benefit of what might be recovered, or a portion thereof. He prayed that in the event it should turn out that complainant was not of age till 1842, that he might be allowed what he had paid him. He denies all the allegations of fraud; that he had made no attempt and had not improperly or unjustly obtained from complainant a settlement or transfer of his estate.

H. Daniel's answer denying champerty, but claiming by purchase the benefit of the suit.

Daniel denied the champerty alledged, but claimed by purchase from complainant, the benefit of the suit.

Decree of the Circuit Court.

The Court below was of opinion that whether complainant was or not of age in January, 1841, was not important; that in either event, the contract of purchase by the defendant, Richardson, ought to be rescinded and disregarded, and that he should be required to settle his accounts as guardian, in the same manner as if no such contract had been made. A decree was accordingly ren-

dered and a commissioner appointed to state and report the accounts of both Richardson and Turpin, with directions to allow the former a credit for the money or property advanced the complainant upon the contract of purchase.

From that decree Richardson has appealed to this Court and Daniel has assigned cross errors.

Upon the main question of fact as to the age of the complainant, the testimony is extremely contradictory, so much so that a critical and laborious examination of the great mass of it in the record, has not resulted in a very satisfactory conclusion. Had the parents of the complainant had two sons of his name, the testimony would very satisfactorily show that one was born on the 4th of January, 1820, and the other on the 4th January, 1821.

But without going into a minute examination and analysis of the evidence, it is sufficient to say, that we are inclined to the opinion that the complainant was born on the 4th January, 1821, and consequently was not of age at the time of the settlement and transfer to the defendant, Richardson. But if wrong in this opinion, and it be conceded that he was born on the 4th of January, 1820, and of course was of age at the time of the settlement and transfer, still we think the Court below was right in disregarding them.

The original contract was made while complainant was an infant, and in anticipation of the appointment of Richardson as his guardian. It provides in express terms for its ratification when complainant should become of age, and the presumption is, was made in view of a speculation on the part of Richardson. The settlement and attempt to confirm it, were made only three days after complainant became of age, even conceding that he was of age in 1841. It is true the transfer at that time made, does not in terms refer to the previous contract, and it even appears that Richardson paid him more than he had stipulated to pay in the former contract. But even if regarded as an original contract, the objection to it would be equally valid. Contracts made by guardians with their wards immediately after they become of age,

Contracts made by guardians with their wards immediately after they become of age, are regarded with suspicion by the Chancellor, and if found to have been made with a view to speculation or upon the appearance of the least unfairness, will be disregarded: (1 Story's Eq.313.)

are always regarded with suspicion by the Chancellor, and if made with a view to a speculation, or upon the appearance of the least unfairness, are always set aside and disregarded. The relation between guardian and ward is considered one of the most important and delicate of trusts. And in the language of Justice Storey, "Courts of equity will not permit transactions between guardians and wards to stand, even when they have occurred after the minority has ceased, and the relation become thereby actually ended, if the intermediate period be short, unless under circumstances demonstrating in the highest sense of the terms, full deliberation and *uberrima fides.* For in all such cases the relation is still considered as having an undue influence upon the mind, and as virtually subsisting, especially if all the duties attached to the situation have not ceased, if the accounts between the parties have not been fully settled, and if the estate in some sort still remains under the control of the guardian." (1 *Story's Equity,* 313,) and authorities there cited.

In this case, the contract was in the first instance, in effect between guardian and ward, and in the last, the relation virtually subsisted. The estate of the ward was still in the hands of the guardian, and it was the very settlement and contract complained of, that finally dissolved the relation.

The decree, we think, is also right in directing a credit to be allowed the defendant, Richardson, for the amount paid or advanced to the complainant. He comes into a Court of equity for relief, and should be required to do equity. It is not alledged, nor does it appear, that he had squandered, injudiciously used or wasted what he had received. Besides, his conduct and representations in regard to his age at the time of the settlement, and also before that time and afterwards, was such as to entitle him to no peculiar favor in the consideration of the Chancellor.

He who comes into Court to ask equity, will be required to do equity.

In regard to the numerous errors assigned by the appellants, we need only remark, without noticing them in detail, that none of them are deemed available. Whether the many exceptions to the testimony, bearing upon

the question of the complainant's age, were or not prop-
erly sustained or overruled, it is not important, in view
of the principle upon which the case is made to turn, to
enquire.

After the complainant had transferred his claim and
the benefit of the suit to the defendant, Daniel, he had
no right to dismiss or control it. And his statements
made after that time as to the matters in contest, were
properly excluded as evidence.

Daniel was properly made a defendant to the com-
plainant's bill, and as no objection was made by the ap-
pellants to the trial of the cause immediately after filing
his answer, it is deemed too late to make the objection
here. And more especially as he substituted as his an-
swer to the complainant's bill, his answer to the cross
bill of Richardson, which had been in the record for
years.

*It is not an a-
vailable error,
that the suit was
tried at the same
term at which
the answer was
filed, if there
was no objection
then made.*

The cross errors of defendant, Daniel, have already
in part been disposed of, and as to the residue, they are
not considered available.

Wherefore, the decree upon both the original and cross
errors, is affirmed.

*Peters and Apperson* for appellants ; *Daniel* for appel-
lee.