## Kerrick v. Lawell.

(Decided October 24, 1912.)

### Appeal from Shelby Circuit Court.

Equity—When Contract for Specific Performance Will Not Be Enforced.—A court of equity will not enforce specific performance of a contract between a person and his foster mother by whom he had been raised from infancy when the contract was made on the day he became twenty-one years of age and while he was still under the influence of his foster mother, the contract not being for his benefit.

E. B. BEARD for appellant.

RALPH GILGERT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Affirming.

Mrs. J. H. Kerrick brought this suit against Frank Lawell to enforce the specific execution of the following written contract:

"This contract made and entered into this 15th day of March, 1911, by and between Frank Lawell, party of

the first part, and Mrs. J. H. Kerrick, party of the second part: WITNESSETH:

"That for and in consideration of the sum of one dollar, paid cash in hand the receipt of which is hereby acknowledged and other good and valuable considerations the party of the first part has this day bargained and sold to the party of the second part a house and lot his interest therein being a one-half interest therein; said house and lot being in Shelbyville, Kentucky, located on the south side of Main street, between Third and Fourth streets, and being No. 302."

He filed an answer in which he pleaded in substance that the contract was obtained from him by fraud and undue influence. Proof was taken and on final hearing the circuit court dismissed the plaintiff's petition. She appeals.

The facts of the case are, in substance, these:

Lucy Lawell, the mother of Frank, was adjudged insane about the year 1896 and has been since a lunatic in an insane asylum. She had two small children: Frank and his brother Orvis. Mrs. Kerrick and her husband took Orvis to live with them and a little later had him bound to them as an apprentice. About a year afterwards, and out of sympathy for the child, they took Frank to live with them, but did not have him bound to them or adopt him in any way. About three years after this Miss Frances Kelly, a great-aunt of the children, furnished twelve hundred dollars with which a house was bought and deeded to the two children, the Kerricks moving into the house and living there with them. At the death of Miss Kelly about twenty-four hundred dollars was left by her to the mother of the children and the interest on this fund, after paying the taxes and other charges, was used to pay for the clothing of the children and some of it was paid to Kerrick and wife. They raised the two boys and did an excellent part by them, treating them as if they were their children. They called Mr. and Mrs. Kerrick "papa" and "mama;" she had been, indeed, a mother to them. On the day that Frank was of age he signed the writing in controversy and this suit was brought about two weeks later to enforce specific execution of it. The only consideration for the writing was the care and attention of the Kerricks to him in infancy. How the accounts would stand between them allowing the Kerricks the reasonable value

of their services and crediting this with what they have received we need not determine. ·The parental relation had existed between Mr. and Mrs. Kerrick and Frank Lawell since he was a small. boy. He scarcely remembered his own mother and had really known no other mother but Mrs. Kerrick. He was known in the community as Frank Kerrick, Mr. and Mrs. Kerrick having no children of· their own.

Specific execution of a contract is decreed not as a matter of right but only where on all the facts the chancellor deems it just to do so. Courts of equity scrutinize with jealousy all contracts between parties standing in a ·relation of trust and confidence with each other,. and contracts between a guardian and his ward made just after the ward becomes of age are regarded with suspicion by the chancellor and will not be enforced unless fair and not prejudicial to the ward. (Lee v. Fox, 6 Dana, 181; Richardson v. Linney, 7 B. Mon.,.573; Richardson v. Spencer, 18 B.. Mon., 465; Clay v. Clay, 3 Met., 552. ··

We see no reason why the same rule should not be applied to a; contract made between a foster parent and the child just on his becoming of age. The proof shows that the Kerricks had.this paper prepared and that Mrs. Kerrick presented· it to Frank and asked him to sign it. He. declined to ·sign it in the .morning· but did sign it in the afternoon.. He· had for years 'been. accustomed ,to obey her.. He was then living in the house with her and was not free from the control which. she had for so many years exercised over him. By this contract he agreed to convey her his half interest in the house which had been bought with the twelve hundred. dollars referred to. In view of the situation of·the parties and the. fact that the paper was executed on his twenty-first birthday. we. are of.the opinion that the circuit ·court properly refused to enforced the specific execution of it. Pomeroy's Equity, sections 961-963.

Section 2034, Kentucky Statutes, provides:

"2. When.it is best for the· ward that the principal of his personal estate shall be applied for his board and tuition, and the court, upon settlement of the accounts, shall deem such application to.have been judicious and properly made. But neither the· ward nor his real estate shall be liable for any such disbursement."

Judgment. affirmed.