## Bennett, etc. v. Stuart.

(Decided November 25, 1914.)

### Appeal from Carter Circuit Court.

1. Contracts—Specific Performance—When Not Enforced.—A court of equity has no right to make a contract to suit one of the parties, but must take the contract as it finds it and determine the rights of the parties from it as they, themselves, make or leave it.

2. Equity—"He Who Comes Into Equity Must Come With Clean Hands."—Equity refuses to lend its aid to one seeking its active interposition who has been guilty of unlawful or inequitable conduct in the matter in relation to which he seeks relief. Equity will not assist one in obtaining the fruits of an act which is illegal, or even enable him to gain from an act which is unconscionable. One may be barred from relief by misconduct with reference to the suit itself.

3. Equity—Equitable Relief—When It Will Not Be Granted.—"He who seeks equity must do equity." This is a general principle applicable to all classes of cases whenever necessary to promote justice, and requires that any person seeking the aid of equity shall have accorded, shall offer to accord, or will be compelled to accord, to the other party all the equitable rights to which the other is entitled in respect to the subject matter. Relief inconsistent with the equities of the adverse party will be denied, and where the granting of relief raises equitable rights in favor of the defendant, the according of such rights will be imposed as a

condition of granting the relief. It is on this principle that one who has failed to perform his own obligations under a contract cannot compel the others to perform. As the acts and conduct of the appellee in this case were such as to estop him from invoking the equitable relief asked in the petition, he should have been left in the situation in which his conduct placed him, and his adversaries left in the situation to which his conduct and the right of self-protection forced them.

SHELBY, NORTHCUTT & SHELBY, WILHOIT & WILHOIT and C. L STEVENSON for appellants.

HAZELRIGG & HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Owing to the numerous transactions injected into the record and the methods of presenting them employed in the pleadings and proof, we have found it difficult to obtain an intelligent conception of the matters in controversy between the parties to this action, but without resorting to unnecessary detail it may be said that the large body of Carter County land, approximating 10,700 acres, constituting the bone of contention in this litigation was originally owned by a corporation called the Lexington & Carter County Mining Company, which, becoming insolvent, by deed made an assignment of its property, including the land mentioned to the Columbia Finance & Trust Company, of Louisville, for the benefit of its creditors. The land contains what is known as the Savage Furnace property, iron and coal deposits and some valuable timber. The Columbia Finance & Trust Company, after a vain attempt to make the assigned property productive by operating it, which had no other result than to cause the assignor to become indebted to the assignee for the expense thereby incurred, brought an action in the Fayette Circuit Court—which had jurisdiction because of the residence of the assignor in Fayette County—to obtain a sale of the assigned property and settlement of the trust. Judgment was rendered by the court as prayed, and in pursuance thereof the Carter county land was sold by a commissioner in October, 1907, to Pride & Day, of Lexington, at their bid of $30,500, and this sale was confirmed by the court.

Pride & Day executed, as required by the decree of sale, three bonds for the purchase price of $10,166.66 each, due in six, twelve and eighteen months, respec-

tively, the first maturing April 14, 1908. At this juncture the appellee, T. G. Stuart, whose business seems to be that of promoting sales of mineral lands, procured of Pride & Day the right to sell for them the land in question. Stuart had no claim against or interest in the land, but had previously unsuccessfully attempted to sell it for the assignee, Columbia Finance & Trust Company. The contract by which he obtained authority from Pride & Day to sell the land was reduced to writing November 8, 1907, and by its terms he was empowered as agent to sell it at not less than $40,000, and his compensation for making the sale was to be one-half of what he could get for it in excess of $31,000. As Pride & Day had bought the land at the price of $30,500, Stuart, by selling it for $40,000, would realize for them out of the advance in price $500.00 plus one-half of $9,000.00, making in all $5,000.00, while Stuart would receive as compensation for his services in making the sale, $4,500.00.

Prior to the purchase of the land by Pride & Day, the appellee, Stuart, had attempted to interest the appellants, W. B. Bennett and H. M. Gross, of Pittsburg, Pennsylvania, in a project to purchase the Carter county land, Gross being a real estate agent who had previously negotiated similar deals for Bennett, and after he secured from Pride & Day the writing of November 8, 1907, appellee succeeded, with the assistance of Gross, in securing from Bennett a proposition by the latter to take over the Carter county property. The writing embodying the foregoing proposition is in the following language:

"Pittsburg, Pa., 11/18/07.

"Col. T. G. Stuart,
        Winchester, Ky.

"I propose to exchange fifty (50) shares capital stock of the Colonial Trust Co., of Pittsburg, Pa., for Twenty Thousand ($20,000) Dollars of the first mortgage bonds at 6% and $50,000 of the capital stock of a proposed company formed to acquire the tract of coal, timber, etc, in fee simple, consisting of about 10,700 acres in Carter County, Kentucky, known as the Mt. Savage tract, on the following conditions: The capital of proposed company not to exceed $300,000, and the bond issue not to exceed $100,000 and the property to be delivered to the company subject to an indebtedness not to exceed $35,000.

"$80,000 in bonds to be left in Treasury and $80,000

in stock to be left in the Treasury for liquidation and development.

"W. B. BENNETT.

"Attest: H. M. GROSS."

On the 25th day of November, 1907, the following written agreement was entered into between the appellee, Stuart, and the appellant, Bennett, in confirmation of what had been proposed by the letter in the previous writing of November 18, 1907:

"This agreement made and entered into this 25th day of November, A. D. 1907, by and between W. B. Bennett, of the City of Pittsburg, County of Allegheny and State of Pennsylvania, party of the first part, and T. G. Stuart, of Winchester, Kentucky, party of the second part.

"Whereas, W. B. Bennett, has sold and transferred 50 shares of the capital stock of the Colonial Trust Co. of Pittsburg, Pa., said stock to be sold or used to raise money by the said second party or his associates, with which to purchase in fee simple, a certain tract of land situate in Carter County, Kentucky, known as the Mt. Savage tract, containing 10,700 acres, more or less; and

"Whereas, the title to said tract of land is to be taken in the name of W. B. Bennett, subject to a bond filed in the clerk's office of the Circuit Court at Lexington, Kentucky, in the sum of $30,500.00 due and payable in three equal payments at six, twelve and eighteen months from October 14th, 1907; and,

"Whereas, it is the purpose of all the parties interested in said tract of form a corporation for the purpose of holding and developing said real estate, and to become incorporated under the laws of the State of Kentucky, with a capital stock of Three Hundred Thousand ($300,000.00) Dollars, and to issue first mortgage bonds on said property in the sum of One Hundred Thousand ($100,000.00) Dollars.

"Now this agreement witnesseth: That after the parties hereto have agreed upon a title for their corporation, and have become regularly incorporated as aforesaid, the said W. B. Bennett does hereby expressly agree to transfer to said corporation the said above described real estate subject to the aforesaid bond of $30,500 for all the capital stock of said corporation, except $50,000 par value of the stock, and in addition to said stock the said W. B. Bennett, is to receive $20,000 of the aforesaid first mortgage bonds on said property, and when said

stock and bonds have been regularly issued and delivered to said W. B. Bennett, shall be the consideration in full for the aforesaid 50 shares of Colonial Trust Co. stock, and the said second party does further agree that none of the remaining $80,000 first mortgage bonds remaining in the treasury of said corporation shall be sold and delivered to any one except for the purpose of paying off the $30,500 bond on said property, and second for improving and developing said property.

"And that in no event shall any of the said first mortgage bonds be sold without notifying W. B. Bennett of the terms and conditions of the sale of said bonds.

"It is also further agreed that $80,000 of the capital stock of said corporation shall remain in the treasury or in the hands of some trustee to be agreed upon by the parties hereto, to be used as sold as a bonus to induce purchasers of bonds to purchase the same and to provide working capital for the said corporation.

"In witness whereof, the parties hereto have hereunto set their hands and seals the day and year first above written.

(Signed) "W. B. BENNETT, (seal).
(Signed) "T. G. STUART, (seal).

Witness:
"H. M. GROSS,
as to W. B. Bennett.
"C. L. STEVENSON,
as to T. G. Stuart."

On the day following the execution of this agreement the appellee, Stuart, for the first time informed the appellant, Bennett, that it was necessary to immediately raise $12,500.00 in cash in order to make the first payment on the property, needed to pay outstanding claims, and made an effort to negotiate a loan on the Colonial Trust Company stock for that sum, but owing to the financial stringency existing at that time, this he was unable to do. The emergency, however, caused him to apply to the appellant, Bennett, who arranged for the desired loan under the following supplemental agreement:

"This Agreement, made and entered into this 26th day of November, A. D. 1907, by and between W. B. Bennett, of the City of Pittsburg, County of Allegheny and State of Pennsylvania, party of the first part, and,

T. G. Stuart, of Winchester, Kentucky, party of the second part.

"Whereas, the said W. B. Bennett, by an agreement of even date herewith, sold and delivered to T. G. Stuart, fifty (50) shares of the capital stock of the Colonial Trust Co. of Pittsburg, Pa.; and,

"Whereas, the said T. G. Stuart is desirous of making a loan of $12,500.00 for ninety (90) days from the date hereof on the aforesaid stock as collateral; and,

"Whereas, the said W. B. Bennett has negotiated said loan, Now this agreement witnesseth:

"That the said second party hereby expressly agrees to and with said W. B. Bennett that if the said T. G. Stuart fails to pay said loan when it becomes due, the said W. B. Bennett shall have the right to pay off said loan, and have the said Colonial Trust Co. stock re-assigned to him, in which event the said stock shall remain in and belong to said W. B. Bennett absolutely.

"In witness whereof the said parties have hereunto set their hands and seals the day and year first above written."

> "W. B. BENNETT, (seal),
> "T. G. STUART, (seal).

Witness:
> "H. M. GROSS,
>    as to W. B. Bennett.
> "C. L. STEVENSON,
>    as to T. G. Stuart."

After the execution of the last writing, C. L. Stevenson, acting as attorney for the appellant, Bennett, went to Lexington, carrying with him the latter's certified checks, one for $3,500.00 and three for $3,000.00 each, making up the $12,500.00 which Bennett was to advance as the first payment. There he was met by the appellee Stuart, and the two called on Pride & Day, to whom Stevenson delivered three of the checks, two for $3,000.00 and one for $3,500.00. The remaining check of $3,000.00 he delivered to the appellee Stuart upon the latter's representation that its proceeds would go to the bondholders of the old company.

After the delivery of these checks the Carter County land was by deed conveyed by Pride & Day to the appellant, W. B. Bennett, as provided by the agreement of November 25, 1907.

The new corporation to be created for the purposes set forth in the several writings referred to was to be

styled Carter Coal and Clay Company, and a writing incorporating the company in conformity to the statutes of this State was duly prepared, signed and acknowledged by the appellants, Bennett, Gross, Stevenson and the appellee, Stuart, on the 11th day of December, 1907, and left with the appellee, Stuart, to be recorded in Carter County and in the office of the Secretary of State. These duties were, however, never performed by him, consequently there was never a formation of the contemplated corporation known as the Carter Coal & Clay Company, nor did he succeed in obtaining any subscribers to the capital stock of the company as he seemed to have undertaken to do. Nothing having been done by the last of March, 1908, the appellant, Bennett, wrote to the appellee, Stuart, the following letter:

"Pittsburg, Pa., April 24, 1910.
(1908)

"Col. T. G. Stuart,
Winchester, Kentucky.

"Dear Sir:—I sent Mr. Stevenson to Lexington on the 21st, and through him paid the bond due April 14th, on the tract of land purchased by me from Messrs. Pride & Day, situate in Carter County, Kentucky.

"As you have not complied with or fulfilled any part of your agreement with me in reference to this tract of land, you are hereby notified that I now own said property for my own sole use and benefit. I have recently learned that you secured $7,250 for your own separate use and benefit out of the proceeds of the sale of this property to me, which is more than ample compensation to you for any services rendered by you in the purchase of this property.

"You will therefore cease making any attempt to sell or dispose of any part of this property, as I have taken full charge of the property myself, and have so notified Capt. McGlohn.

Yours very truly,
(Signed) "W. B. BENNETT."

Shortly after this letter was written Bennett paid all the sale bonds that had been executed for the land by Pride & Day, and on July 12, 1909, the appellee, Stuart, brought this suit in the Carter Circuit Court against the appellants, Bennett, Gross, Stevenson and McGlohn, the latter being the agent of Bennett and in charge of the Carter county land. The petition, after setting out the various agreements whereby the appel-

lant, Bennett, obtained the title to the Carter county land, the contemplated organization of the corporation to which it was to be later conveyed, the execution of the articles of incorporation and the alleged refusal of the appellant, Bennett, to allow them to be recorded or permit the corporation to be organized, also his refusal to convey to it the Carter county land, further alleged, that he, appellee, was to receive in his own right $55,000.00 of the capital stock of the corporation and $55,000.00 on behalf of associates to be named by him, none of which ever came to his hands; and that by reason of the refusal of the appellant to convey the Carter county lands or permit the organization of the corporation to be formed for developing the property, he had been damaged in the sum of $50,000.00. The prayer of the petition is as follows:

"Wherefore, the plaintiff prays for warning orders against defendants, save McGlohn, as well as for personal service of process againt them; that the defendant, Bennett, be compelled to convey said lands to the Carter Coal & Clay Company, and that he be adjudged to hold said lands for plaintiff and said defendants, Gross, Stevenson and for said corporation, Carter Coal & Clay Company, and that the defendants be required to specifically execute the agreements filed herewith and permit said charter, as acknowledged, to be lodged for record and recorded in the office of the Carter County Court Clerk's office, for a distribution of the stock and bonds as alleged; for judgment for $50,000 in damages; for his costs and all proper relief."

A general demurrer filed to the petition by appellants was sustained. In June following an amended petition was filed over the objection of appellants and a demurrer to the petition as amended was overruled. In the amended petition it was alleged, in substance, that at the time appellee began the negotiations with the appellant, Bennett, which led to the subsequent agreements made between them there was due appellee, both from Pride & Day and from the former owners of the Carter county land, certain compensation and commission on account of the sale to the appellant, Bennett, for which he had a lien. After the filing of an answer specifically denying all the material allegations of the petition as amended, such subsequent responsive pleadings as were necessary, and the taking of proof, which consisted wholly of the depositions of the parties themselves, the

case was submitted for hearing on March 12, 1913, and by the judgment then rendered the circuit court refused the specific performance prayed for by appellee, also his prayer for a cancellation of the contract of November, 1907, and denied any relief to either party. It was, however, directed by the judgment that the case remain on the docket until the next term, with leave to the plaintiff to "plead further if he so desires."

Appellee did not thereafter further amend his petition, but at the following term moved for a judgment on the face of the papers decreeing that the appellant, Bennett, held the legal title "in trust for those who would be the stockholders in the proposed corporation." This motion was sustained by the court, which adjudged:

"That the defendant Bennett holds said lands in controversy here in trust for the plaintiff, Stuart, and the defendants herein who constitute joint adventurers in the enterprise of buying the Mt. Savage land and were the sole shareholders in the proposed corporation provided for in the contracts and exhibits sued on herein, and the court further adjudges that the plaintiff Stuart and the said defendants Gross & Stevenson are the joint owners of the said lands in the proportion of their ownership of shares in said proposed corporation, which was agreed to be formed under the contracts and exhibits sued on herein, excluding however from this judgment the 410 29/100 acres sold by defendant Bennett to the Mt. Olive Hill Fire Brick Company; that the plaintiff is the owner of the undivided 110/220 of said land, excluding said lands sold by said Bennett to the Olive Hill Fire Brick Company, but all said lands (except the excluded part as aforesaid) are subject to a lien in favor of said Bennett for the sum of $30,500.00 with interest thereon from October 14, 1907, until paid, and the sum of $12,500.00 with interest thereon from the same date until paid, but these sums are to be credited with or reduced by any amounts, if any, received by Bennett as of the date received from the sale of any of said lands and credited also by such amounts, if any, which Stuart may show himself entitled to for sales of timber by said Bennett or other property or material taken off of said lands by him and as to which matters the parties may take further proof—the matter of dividing said lands and the conveyance of Stuart's interest to him by the Commissioner and all other matters em-

braced in said motion in this cause not herein specifically determined, are reserved for future adjudication."

Appellants complain of the foregoing judgment and have appealed.

Waiving appellants' contentions that the judgment of March 12, 1913, was a final one, and that by reason thereof the circuit court was without jurisdiction to render that of June 14, 1913, it nevertheless remains to be determined whether the judgment of June 14th was authorized by the pleadings or proof. As has been stated, by the original petition appellee sought a specific performance of the contract of November 25, 1907, and a judgment against appellants for $50,000.00 damages alleged to have resulted to him on account of their failure to perform the contract. By his amended petition he alleged that there was due him, both from Pride & Day and from the Lexington & Carter County Mining Company, "compensation and commission" on account of the sale made of the Carter county land to the appellant Bennett, for which he had a lien, but the amount of such "compensation and commission" is not stated nor does the prayer of the amended petition ask the enforcement of the alleged lien. In view of the appellee's own admission, that whatever lien he might have asserted against the Carter county land for compensation or commission due him from the Lexington & Carter County Mining Company, or the Columbia Finance & Trust Company, for services rendered by him in attempting to effect a sale of the property, had been extinguished by the decretal sale thereof to Pride & Day, his attempted assertion of such lien in this case was necessarily futile; and he certainly had no lien against the land for the services he rendered to Pride & Day for effecting the sale of it to the appellant, Bennett, as, according to his further admission, he received out of the $12,500.00 advanced by Bennett $7,500.00.

It will be observed from the language of the judgment of June 14, 1913, that the circuit court held that the appellee, Stuart, and the appellants, Gross and Stevenson, are the owners of the Carter county land in the proportion of their ownership of shares of stock in the proposed corporation which was agreed to be formed under the contracts exhibited with the petition, but excluded the appellant Bennett from any ownership in the land; adjudging, however, that he held the title to the land in trust for the appellee, Stuart, and the appellants

Gross and Stevenson, and relegated Bennett to a lien for the sum of $30,500.00, with interest from October 14, 1907, and the sum of $12,500.00, with interest from the same date, the first sum being the amount paid by him in satisfaction of the sale bonds against the land, executed by Pride & Day, and the second sum the amount he advanced appellee and which the latter divided with Pride & Day; the sums mentioned to be credited by such amounts, if any, as Bennett might have received from a sale of any part of the land. As Bennett is the only one of the four persons connected with the purchase of the Carter county land from Pride & Day that furnished any money to pay for it, it is not perceived upon what principle the judgment excluded him from the ownership of an interest therein, or why he should not be a beneficiary of the alleged trust as well as Stuart, Gross and Stevenson. Moreover, as appellee does not claim that he was to have more than $55,000.00 of the $300,000.00 of stock issued, we are unable to understand why the judgment should have declared him entitled to 111/220, or one-half of the land. It is patent, therefore, that if the principle of ownership in the land in the ratio of stock ownership should control, the interest awarded appellee by the judgment is too large by nearly two-sixths.

We are unable to find that appellee showed himself entitled to any shares of stock in the proposed corporation, had it been organized. The only mention in any of the contracts of appellee's stock ownership is found in the fifth of the proposed articles of incorporation, in which he is named as a subscriber for three shares of the capital stock. It is true that in the petition and his deposition the claim is made by appellee that he was to have $55,000.00 of the stock to be issued after the organization of the corporation and that $55,000.00 thereof was to go to his unnamed associates, also $55,000.00 to the appellant Gross and $5,000.00 to the appellant Stevenson, which, with the $80,000.00 to be left in the treasury, made up the entire capital stock of $300,000.00, but the contracts of November 25th and 26th, which are to be treated as one contract, make no mention whatever of the fact that appellee was to have $55,000.00 of the stock or that a like amount thereof was to go to his associates or Gross or $5,000.00 to Stevenson. Indeed, the only person mentioned in these contracts as entitled to the stock of the proposed corporation was the appellant, Bennett, who was to receive $50,000.00 of the stock

and $20,000.00 of the $100,000.00 of first mortgage bonds which were to be issued by the corporation, and the issue of this stock and bonds to him was because of his having undertaken to furnish all the money required to pay for the Carter county land and to perfect the organization of the corporation.

There was, it appears, some sort of an understanding between appellee and the appellant Gross that such commission on any sale of the property as Gross might help him make, should be divided between them, but such an agreement between appellee and Gross could have given neither of them any right to any part of the capital stock of the corporation by way of commissions. If there had been, as claimed by appellee, an agreement between himself and the appellants to divide among themselves the capital stock of the proposed corporation in the manner claimed by him, it would have been illegal, as it would have enabled all the parties save Bennett to obtain the stock without paying therefor any money or its equivalent in service. The agreement, therefore, would have been unenforceable because in violation of Section 193 of the State Constitution, which provides:

"No corporation shall issue stocks or bonds except for an equivalent in money paid, or labor done, or property actually received and applied to the purpose for which such corporation was created, and neither labor nor property shall be received in payment of stock or bonds at a greater value than the market price at the time said labor was done or property delivered, and all fictitious increase of stock or indebtedness shall be void."

The contract of November 25, 1907, must be regarded as presenting the agreement made between appellee and the appellants, and it, as previously stated, provides that the appellant Bennett was to give for the Carter county land fifty shares of Colonial Trust Company stock, valued at $400.00 per share, and was to receive $20,000.00 in first mortgage, six per cent bonds and $50,000.00 in the stock of a company which the appellee, Stuart, was to organize and cause to be incorporated, its capital stock not to exceed $300,000.00 and with a bond issue not to exceed $100,000.00, to which corporation the Carter county land was to be conveyed by Bennett, subject to an indebtedness of not more than $35,000.00, while $80,000.00 of the bonds and $50,000.00 of the stock

was to be held in the treasury for the purpose of liquidating the $35,000.00 lien for the Pride & Day bonds and for the future development of the property. The agreement made no provision whatever as to the remaining $170,000.00 of stock.

By the supplemental contract of November 26, 1907, it was agreed that the fifty shares of the capital stock of the Colonial Trust Company, which the appellant, Bennett, had delivered to the appellee, Stuart, for the purchase of the Carter county land, should be returned to Bennett for him to negotiate a loan thereon which Stuart represented was necessary to advance on the first payment of the land; the contract further providing, that if Stuart failed to pay the loan thus negotiated when it became due, Bennett should pay it, in which event the fifty shares of Colonial Trust Company stock should become and remain his property. It is admitted by appellee that the appellant Bennett paid the loan of $12,500 and that appellee has never repaid him that sum, for which reason Bennett retained and yet has the Colonial Trust Company stock which had been pledged as collateral for the loan.

It is alleged in the answer of the appellants that they were induced to enter into the contracts of November 25th and 26th by misrepresentation and fraud practiced upon them by the appellee, Stuart; the fraud consisting in his representing to them that the Carter county land was the property of the Columbia Finance & Trust Company and that he, appellee, was acting as the attorney and agent of that company in selling to them the property; in concealing from them the fact that it had been sold at decretal sale and purchased by Pride & Day; and in representing to them that the land was worth $300,000.00 and had a rental value of from $3,500.00 to $5,000.00 per year; also that there was a large body of cannel coal on the property with a railroad running to it, also several bituminous coal mines equipped for operation, and that the timber upon it alone was worth $100,000.00; and further, that if they would enter with him into the arrangement proposed for the purchase of the property and convey it to the corporation to be organized by them, the Columbia Finance & Trust Company would subscribe for $50,000.00 of the capital stock of the company, and he, appellee, would have no difficulty in placing the remainder of the stock with persons of his acquaintance who would willingly purchase it; that he

also obtained from the appellant Bennett the $12,500.00, which he divided with Pride & Day, upon the representation that it was needed as an advancement on the purchase price to be paid for the property. The answer further alleges that these several representations were untrue, but were believed by them to be true, as they were non-residents of the State and wholly unacquainted with the Carter county land.

In giving his deposition appellee did not deny that he had represented to the appellants that the property was worth $300,000.00. He did, however, deny the other representations charged to be false, but his denial is not supported by the testimony of any other witness. Upon the other hand, the three appellants, Bennett, Gross and Stevenson, testified that all the representations above set forth were made by appellee as claimed by them. It appears from the evidence that appellee had, before the purchase of the property by Pride & Day, obtained of the Columbia Finance & Trust Company an option on the Carter county land and had tried to sell it, these efforts to sell continuing through two or three years without success. It is further manifest that he was not the agent of the Columbia Finance & Trust Company, but was the agent of Pride & Day, at the time he procured from appellants the contracts of November 25th and 26th, 1907. It is also manifest that the Carter county lands were not worth $300,000.00 and that they did not possess, in quantity at least, the coal or timber which appellants claim he represented it to contain; and it is further manifest that the $12,500.00 which appellee induced the appellant, Bennett, to advance him was not used in the purchase of the land or formation of the corporation, and that at the time it was divided between Pride & Day and himself, appellants had no information that it would be applied to such use.

It also appears from the evidence that the paper containing the articles of incorporation for the Carter Coal & Clay Company, immediately following its execution, was left with the appellee, upon whom was imposed the duty of having it duly recorded in this State, but that that duty was never performed by him. It was also his duty under his agreement with appellants to solicit and receive subscriptions to the capital stock of the corporation, and yet he did not receive or report a single subscription. In the meantime, the appellant Bennett, having received information of the maturity, April 14,

1908, of the first of the sale bonds executed by Pride & Day for the Carter county land, on April 21st sent Stevenson, his attorney, to see the Columbia Finance & Trust Company, at Louisville, Kentucky, for the purpose of obtaining further time to pay the bond, and learned from its officers that the Columbia Finance & Trust Company, though at one time assignee or receiver of the property, had had nothing to do with it since its sale to Pride & Day, and that they had no control over the sale bonds which had been executed by the latter for the purchase price of the property; and, further, that the property was not worth exceeding $30,000.00 and they would not make a loan upon it of more than $15,000.00; moreover, that the appellee had not represented the Columbia Finance & Trust Company in his negotiations with Bennett, but at one time had an option on the property in the hope of making a sale of it for his own benefit. Shortly thereafter the appellants, Bennett and Stevenson, met the appellee at Ashland, Kentucky, and according to the statements of the former, appellee then tried to induce Bennett to pay the sale bond and continue to hold the property under the agreement of November 25, 1907, but that Bennett positively refused to do this. A few days after this interview Stevenson went to Lexington, where he saw Mr. Pride, of the firm of Pride & Day, and for the first time learned of the real relation of appellee to that firm and of the division which had been made between them of the $12,500.00 furnished by Bennett in November of the previous year.

After receiving from Stevenson a report of this interview between the latter and Pride, Bennett paid all the sale bonds which had been executed by Pride & Day, and on April 21, 1908, wrote to Stuart the letter copied in a preceding part of the opinion, which of course ended the relations between them and led to the bringing of the present action by Stuart. So at the time the suit was instituted the status of the parties was as follows: The appellee, Stuart, for the services rendered by him in selling the Carter county land for Pride & Day, had received $7,500.00, which, if he were suing upon the *quantum meruit*, would seem to be reasonable compensation therefor. Upon the other hand, the Carter county land had been obtained by the appellant, Bennett, at a cost of $43,000.00, $30,500.00 of which was paid in satisfaction of the sale bonds which had been executed by Pride & Day and $12,500.00 of which had been divided

between them and appellee, and this aggregate sum of $43,000.00, according to the weight of the evidence, is several thousand dollars in excess of the actual value of the lands. In view of this fact and of the failure of appellee to record the articles of incorporation, perfect the organization or make sales of its capital stock, his attitude is not such as to demand anything further at the hands of the appellant, Bennett. Neither Gross nor Stevenson has been benefited or injured in their transactions with the appellee, and they are demanding no relief other than the defeat of the appellee's claims.

In view of the situation in which appellee's conduct seems to have placed himself and the other parties to this litigation, the inquiry naturally suggests itself, what disposition should a court of equity make of the case? A court of equity has no right to make a contract to suit one of the parties. It must take the contract as it finds it and determine the rights of the parties from it as they themselves make or leave it. Garnes v. Frazier & Foster, 115 S. W., 998. In other words, the case is one in which there should have been an application by the court of the maxim: "He who comes into equity must come with clean hands." The meaning of this maxim is, that:

"Equity refuses to lend its aid in any manner to one seeking its active interposition, who has been guilty of unlawful or inequitable conduct in the matter in relation to which he seeks relief. * * * The most direct application of the maxim is the uniform refusal of equity to assist one seeking its aid to enforce or to carry to fruition a contract or transaction in which he has been guilty of conduct wrongful towards his adversary, so as to obtain the benefits of a fraud perpetrated upon him. Nor will equity assist one in obtaining the fruits of an act which is illegal or even enable him to gain from an act which is unconscionable. One may be barred from relief by misconduct with reference to the suit itself." 16 Cyc, 144.

There is yet another equitable maxim equally applicable to the case in hand: "He who seeks equity must do equity."

"This is a general principle applicable to all classes of cases whenever necessary to promote justice, and requires that any person seeking the aid of equity shall have accorded, shall offer to accord, or will be compelled to accord, to the other party all the equitable rights to

which the other is entitled in respect to the subject matter. Relief inconsistent with the equities of the adverse party will be denied, and where the granting of relief raises equitable rights in favor of the defendant, the according of such rights will be imposed as a condition of granting the relief. It is on this principle that one who has failed to perform his own obligations under a contract cannot compel the others to perform * * *." 16 Cyc, 140; Richardson v. Linney. 7 B. Mon., 571; Deppin v. German American Title Co., 24 R., 1110; Lucas v. Mitchell, 3 A. K. Mar., 244.

Without imputing to the appellee an actual intent to defraud, it is sufficient to say that his acts and conduct with respect to the transactions involved in the instant case were such as to estop him from insisting upon the relief demanded in his petition. He should have been left in the situation in which his conduct placed him, and his adversaries left in the situation to which his conduct and the right of self-protection forced them. Therefore the circuit court should not have rendered the judgment of June 14, 1913, but should have allowed the case to finally rest upon that of March 12, 1913, which properly determined the rights of the parties.

For the reasons indicated the judgment of June 14, 1913, is reversed and the cause remanded with direction to the circuit court to set aside that judgment and enter in lieu thereof that of March 12, 1913, omitting such part thereof as retained the case on the docket for further steps. In other words, the judgment of March 12, 1913, should be re-entered with such addition as will finally dispose of the case and take it from the docket.