CASE 66—CORPORATIONS—NOVEMBER 29, 1884.

# Haldeman, &c., v. Ainslie, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

A corporation known as the "Great American Fire Extinguisher" was organized, each member subscribing for four hundred shares of stock of the value of $100 each, but paying therefor only $1,500.00. The articles of incorporation provide that the highest amount of liability of the corporation shall in no case exceed $15,000.00.

1. *Held*—As between the corporation and a creditor, the latter could compel the payment of the entire stock, if necessary to satisfy his demands.

2 But if a member of the corporation, of necessity knowing the purport of the articles of incorporation, contract debts beyond the limits of the articles of incorporation without the consent of the stockholders, and pay said debts, he can not recover such debts beyond the limit fixed in the articles.

3. The only case in which he could recover would be upon the ground that the stockholders unanimously agreed to the creation of the debt.

M. MUNDAY, RUSSELL & HELM, T. L. BURNETT, C. H. GIBSON, T. B. FAIRLEIGH AND BROWN & DAVIE FOR APPELLANT.

1. Appellee, Ainslie, made these debts of the corporation in violation of the company's charter, and, therefore, he has no action against the stockholders. (3 Mason, 308; 105 U. S. Sup. Ct., 143; 1 DeGex & Smale, 422.)

2. The corporation, with Ainslie's consent and agreement, accepted from each of defendants his patent right interest and $500 in full payment of his stock subscription, and issued him "full paid stock" therefor. (Leifchild's Case, Law Rep.; 1 Eq., 231; 1 Dana, 609; 11 Eq., 140; 105 U. S. 153; 5 Fed. Rep., 537; 97 Ill., 537; 3 Wood, U. S. A. Ct. Cases, 37.)

.3. Ainslie can not compel the other stockholders to repay under the guise of "contribution." (Brandt on Suretyship and Guarantor, sections 224, 225, 227; Lindley on Partnership, 754.)

.4. Even if all we have urged be unsound, and if the agreement of subscription between Ainslie and the stockholders were fraudulent, he can not recover. (Pom. Eq. In., volume 1, 401; 2 Littell, 12; 17 B. M., 783; 10 *Ib.*, 128.)

BARNETT, NOBLE & BARNETT, GOODLOE & ROBERTS AND ALEX. P. HUMPHREY FOR APPELLEES.

1. It has long since been established that the capital stock of a corporation is a trust fund for the payment of its debts. (91 U. S.. 45; 95 *Ib.*, 668; 102 U. S., 314; 105 U. S., 143; 17 Wall., 610; 16 *Ib.*, 390; 22 Howard, 387; 22 Beavan, 143.)

.2. It can not be doubted that the debts due by the corporation could have been enforced by the stockholders. Every one of the appellants was liable for it. (1 Lindley on Part., 334; 3 DeG., M. & G., 476; 2 Lindley on Part., 760.)

.JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The present action in equity was instituted in the Louisville Chancery Court by Edwin Thompson, and a number of banks in that city, and by Ainslie, Cochran & Co., as plaintiffs, against Haldeman and others, defendants. During the progress of the action the appellee, Mrs. George Ainslie, as the executrix of her husband, having paid off the debts asserted by the banks and Thompson against the defendants, was made the real plaintiff in interest, and the litigation resulted in a judgment for Mrs. Ainslie against the appellants, and also in a judgment in favor of Ainslie, Cochran & Co., who were the surviving partners of the firm of which Mrs. Ainslie's deceased husband was a member.

The matters in controversy originated from a settlement of the assets and liabilities of a corporation styled *The Great American Fire Extinguisher Company.* The article of subscription was executed in October, 1873, under which the corporation was formed, for the

purpose of manufacturing and selling this patent fire extinguisher. The capital stock was $1,200,000, and each subscriber, upon executing his note for $1,000, payable in bank, and paying $500 in money, as provided in the fifth section of the articles of incorporation, became entitled to a paid-up stock of four hundred shares, valued at $100 per share, in other words, became entitled to $40,000 of stock in the corporation.

By section 6, of the act of incorporation, it is provided that "the highest amount of indebtedness or liability to which this corporation is at any time to subject itself shall be the sum of $15,000," and by section 7, "the private property of stockholders shall be exempt from liability for the corporation debts of this company."

The company was organized with B. F. D. Fitch as president, and George Ainslie, J. F. Bullitt, B. DuPont and others, directors. The company, it seems, had a business existence only from early in the year 1874 until November, 1875, at the end of which time it became evident that the patent was a failure, and by some resolution of the stockholders or transfer by the board of directors with their consent, the assets of the corporation were transferred to the Babcock Fire Extinguisher Company, and the directory required to wind up the affairs of the company.

When the corporation dissolved, or became bankrupt, it was discovered that its indebtedness amounted to over $33,000. On the paper to the banks, which constituted the greater part of this sum, George Ainslie, the deceased, had made himself personally liable as indorser or otherwise, in fact for the entire amount

· except $3,070, a debt incurred with the firm of Ainslie, Cochran, & Co., of which the deceased, George Ainslie, was the active member.

The assets of the insolvent corporation, when transferred to the Babcock Company, were valued at $23,750, and for these assets the latter company gave $28,000 in its bonds and a large quantity of its stock, and what has become of these bonds or the stock does not distinctly appear, but it is developed in the record that the Babcock Fire Extinguisher Company soon became insolvent, and its stock and bonds may be worthless. Mrs. Ainslie, as executrix of her husband, paid off the ·debts for which her husband was personally liable, and has sued the other members of the corporation, who are the appellants here, for contribution. Having obtained ·a judgment below, the defendants are appealing from that judgment.

The principal defense made by the appellants is: That the president of the corporation, Fitch, and George Ainslie, the decedent, a director, without the consent of the members of the association and without any authority from the board of directors, created this large indebtedness in direct violation of the terms of the charter.

To what extent the directors or any member of the corporation participated in the creation of these debts, is not made manifest by the record, and the only parties to the original agreement who seemed to have incurred the liability are George Ainslie, the decedent, and Fitch, the president.

We find, upon an examination of the minutes of the corporation, no express authority given any one to

create these debts, and while the work and material for the construction of the extinguisher was done and furnished by the firm of Ainslie, Cochran & Co., from which the liability of the company might arise, we see nothing in the form of a resolution by the board of directors, or direction given any member of the directory or the corporation to incur liabilities in excess of the amount fixed by the charter.

The effect of the limitation upon the amount to be paid by the subscribers for their stock, would not exempt them from liability to a creditor who had dealt with the corporation in ignorance of the articles of association, limiting the amount of the indebtedness to be created by the corporation or those conducting it.

In this case the subscriber of stock obtained four hundred shares of stock, valued at $100 per share, for $1,500. They paid $30,000 dollars for the patent right and had $15,000 of working capital.

The public had the right to believe that each subscriber, taking four hundred shares of stock at $100 per share, had either paid up this stock or was liable for the amount, and when trusting the corporation upon the faith of its ability to pay, and without any knowledge as to the restrictions contained in the contract between the stockholders, a creditor of the corporation could compel the payment of the entire stock, if necessary to satisfy his demand.

In this case we think it clear that the banks could have recovered of the stockholder for the reason that those conducting the business of the corporation had created these debts for the benefit of the corporation. The banks could have pursued any of the parties to the

bills, and required the individual members of the corporation, by a proceeding in equity, to pay up their stock in order that the debts might be satisfied.

The doctrine, as stated in Hall v. Upton, 12 Otto, will not be controverted, and that is: "When one has become bound, as a subscriber, to the capital stock of a corporation, he must pay his subscription, if required to meet the obligations of the corporation."

The question presented in this case is: How, or by whom, were these debts contracted? If by Fitch or Ainslie, in violation of the charter, and they, or either of them, subsequently paid off the debts, then it is maintained by the appellants that no right to contribution exists.

It is plain that the parties to this association were endeavoring to protect themselves from liability when they inserted section 6, providing that "the highest amount of indebtedness or liability to which this corporation is at any time to subject itself, shall be the sum of $15,000." This section is certainly not meaningless, and when the board of directors or any member of the corporation violates this provision of the charter, and seeks to make the stockholder personally liable, the consent of the stockholder must be shown or the liability will not attach. As between the stockholders, it can not be said to be a corporate act, and neither the board of directors nor a majority of the members can make the individual stockholder liable in such a case, although they may remove the limit by a majority vote. It is a contract between them that no member, or a majority of the members, can repudiate so as to create a personal liability as between each other in excess of

what they have agreed to pay. The restriction as to the liability for an amount less than the stock is binding between the parties.

The case in .22 Beavan, 143 (*in re* Norande Yarn Co.), turned upon the construction of the deed, and it was there held, when the debt had been created in good faith, in considering the whole instrument, it could not be said that the directors are to personally bear the loss, and no portion of it to be paid by the other proprietors. The clause of the writing in that case is unlike this, and in ascertaining its meaning, the court said that *it was not intended to limit the liability.*

Mr. Lindley, in his work on Partnership, criticises the case of the German Mining Company, 4 DeG., M. & G., where it was held that directors might recover of the share-holders, although they had borrowed money in violation of the charter, by saying that courts have gone too far in allowing the credit of limited associations to be pledged by the directors.

"It is difficult to understand the correctness of this view (the liability of the share-holder to the director), or to see how that which, as between the directors and the share-holders, is a clear excess of authority, can, as between the same persons, be deemed warranted by any trust."

Again: "It is not a little remarkable that while courts have gone great lengths in protecting share-holders against *bona fide* creditors, by making them look to the powers of the directors, comparatively little protection is afforded to share-holders against *bona fide* directors. (Lindley on Partnership, page 764.)

The doctrine maintained by the appellees is there re-

pudiated, unless the acts of the directors are approved and adopted by the share-holders, and then only such as ratify their action can be held by the directors personally liable or be required to contribute.

In the case of Scovill v. Thayer, reported in 105 United States, the stockholders agreed among themselves to pay twenty cents on the dollar of their subscriptions and receive full paid stock therefor. It was held that, as between them and the company, this was a perfectly valid agreement.

In the case of the Worcester Corn Exchange Company, reported in DeGex & Gordon's reports, third volume, where a joint stock company undertook to build a corn exchange, the expenditures therefor being limited, at a general meeting held after the formation of the company, the directors reported that the subscribed capital was not sufficient to defray the expenditures, and by a subsequent report it was stated that each share-holder will be required to contribute a larger sum than he has already subscribed.

The directors advanced moneys from their own pockets and borrowed of others to pay the creditors of the joint stock company, and when seeking to recover of the share-holders, the Lord Chancellor said : "This is a distressing case. There is no suggestion whatever as to mismanagement or misconduct on the part of the directors. It is quite clear that, as between the share-holders and the directors, all that is to govern their respective liabilities is to be discovered in the deed which they have entered into ; that alone must regulate their rights *inter se*."

It was also held in that case, when discussing the

liability of the share-holders as to third parties, that a bank of whom some of the money had been borrowed could not recover because the bank had clear notice of the stipulations of the deed and of the limited liability of each share-holder, as one of the partners in the bank was a share-holder in the company.

That case is similar to the case before us. In that case the share-holder had agreed to pay a certain rate on each share and no more, and the court held that the deed was the contract between the parties to it, that being the contract, the director had no power to violate it.

If the amount paid by each subscriber of stock in the present case had constituted its full value and included all the shares of the corporation and the directors or Ainslie & Co. had advanced moneys in addition to the capital stock, it might be contended, with as much propriety as is maintained here, that the stockholders would be liable, because the necessities of the company required the expenditure and the share-holder was deriving the benefits.

The answer to either position is : That the charter is the contract between the share-holders, and no member of the corporation can violate it, whether president or director, by making an unauthorized expenditure, unless approved or directed by the share-holders.

This brings us to the consideration of the question as to whether the stockholders in this case or the directors authorized the creation of these debts, or ratified the action of those who contracted them after they were made.

The directors in this case claim that they are not

liable, and it is plain that the share-holders can not be held responsible with the proof before us. We find nothing on the books of the corporation authorizing any one to contract debts for and on behalf of the company, but, assuming as Ainslie & Co. were intrusted with the manufacture of the extinguisher and that Fitch and Ainslie, the latter of whom was a member of that firm, and who, the one the president and the other a director of the association, had the authority to manufacture and sell the extinguisher, and to incur the expenditures therefor, it can not be said that they had the implied power to go beyond the limits of the charter and involve the corporation, without the consent of the stockholders, in financial trouble. It is evident that these banks did not make the corporation their debtor without the intervention of some of the parties connected with it, and whenever the notes evidencing these liabilities appear, they are found to be executed or indorsed by Fitch as president of the corporation, and Ainslie in his individual capacity. It is a conceded fact, or, if not, the evidence is conclusive, that Ainslie obtained this money upon his credit, and the proof conduces to show that it must have been used in the manufacture of the extinguisher from which the company of which he was a member expected to derive the benefits.

The president and secretary of the corporation have both testified in this case, and there is neither a statement from them nor an exhibit filed from the books of the company showing any direction or authority from the board of directors or from the individual stockholders to Fitch and Ainslie to create these debts.

Nor had the board of directors or a majority of the stockholders the power to increase the liability of the corporation beyond the limits of the charter. If so, we see but little necessity in having a charter as the organic law of such associations; to adjudge otherwise would leave the share-holders at the mercy of the board of directors, who, if not controlled by the charter, could exercise unlimited power.

In this case, if the board of directors had authorized the creation of the debts in express terms, it would not be a corporate act because in excess of the authority conferred by the charter. The unanimous vote of the share-holders could alone authorize the act so as to bind the corporation or the share-holders.

"Share-holders in a limited liability company can not be compelled to contribute more than the amount of their shares; either for the purpose of indemnifying directors or for any other purpose." (Lindley on Partnership, page 768.)

It can not be maintained that directors have the power to create a new liability or increase the amount for which the share-holder has agreed to become bound by an express agreement for no other reason than that the interest of the corporation required the expenditure. An act in excess of corporate power "can be ratified only by the unanimous consent of the share-holders. In such case, even the majority can not ratify the act in behalf of the company, for the powers of the majority are derived wholly from the charter itself."

"The distinction between the delegated authority of a majority and the corporate authority granted by law is of much importance, on account of its bearing on

the validity of corporate acts. In the one case the doctrine of the law of agency applies, while in the other case the question is as to the legal effect of a statutory or common law prohibition. In the former case the familiar rule applies that an unauthorized act of an agent may be ratified; in the latter it has no application." (Morawitz on Private Corporations, pages 76 and 34.)

As to matters within the corporate authority, the voice of the majority is that of the corporation, but the rule is otherwise, if in excess of the authority or power conferred by the agreement between the stockholders. While the unanimous voice of all the shareholders would have been sufficient to remove the limit to the liability of each member in this case, we find no such allegation in the pleadings, and if alleged, no proof to support it, but on the contrary the facts conduce to show that the share-holders were not all present at any meeting, and therefore could not be held responsible, and if any liability exists, it must apply to the individual member who, by reason of his agreement to become bound or his direction to Ainslie or Fitch to create the debts, has assumed a personal responsibility.

The only reason for holding the share-holders liable to third parties, who are creditors, would be the publication to the world that the stock amounted to so much, and had been fully paid.

There was no such acquiescence in the conduct of Ainslie or Fitch, as would make the share-holders responsible. The organization lasted but a short period from the time it began active business, and in Novem-

ber, 1875, when the insolvent condition of the company became apparent, and its assets were transferred to the Babcock Company, this indebtedness had already been created by Ainslie and Fitch, and the only alternative left the share-holders was to dispose of the assets and wind up the corporation, or assume the liabilities incurred and proceed with the enterprise.

The effect of the meeting in November, 1875, was to appropriate the assets to the payment of the corporate debts, and there is nothing, so far as we perceive, indicating any intention on the part of the share-holders to make themselves personally liable.

The direction to wind up the corporation, and pass the assets to an assignee, for the purpose of paying the debts, or a direction to the directors to proceed as soon as possible to pay off the debts of the company, was not an agreement on their part to pay off $18,000, out of their individual estate, created in excess of the limit made by an express provision of the charter, and should not be so construed.

The personal liability of those who united with Ainslie in creating these debts, or who directed him to do so, is not a question involved in this case, and it is certainly manifest, we think, that all these debts were created on the credit of Ainslie, and that, as surety of the corporation, he was looking to the assets alone for indemnity.

He could have expected nothing else, because he knew when he signed this paper the nature and purpose of the limitation, as to the liability of each shareholder, by the express provisions of the agreement between them; and while facts might be adduced,

creating a personal liability on the part of some of the directors or share-holders, there is nothing in the record before us that would authorize such a conclusion or such a judgment.

The report made in January, 1875, showed a debt of $19,000, and assets greatly more than sufficient to pay all the debts, and in less than a year the corporation became insolvent.

The fact that such a report was filed without objection can not work an estoppel, or amount to a ratification. The greater part of the debt, in fact nearly all ·of it, was created after that date, and if Ainslie's liability was for debts already created by the company, it should be ascertained who created them, and then, if in excess of the charter, their liability (those creating the debts) to Ainslie may arise.

As the case is presented, the equities of the banks will not protect Ainslie or his personal representative, :as, but for Ainslie's action, no such equities would have existed.

His being a member of the association, with full knowledge of the protection to the share-holder by the charter under which they all derived their power, will preclude him or his representative from asking ·contribution, either on account of the moneys paid to the banks, or on the claim of Ainslie, Cochran & Co., ·of which Ainslie was an active member.

Judgment reversed and remanded for proceedings consistent with this opinion.