## Dick v. Harris' Exor.

(Decided December 7, 1911.)

## Appeal from the Jefferson Circuit Court.
## (Chancery, First Division.)

1. Gifts—Right of Donee to Testify After Death of Donor.—The donee cannot testify after the donor's death against his executors to establish the alleged gift.

2. Same—Where Gift Becomes Complete.—The gift is not complete where the donor tells the donee that he has placed ten bonds in his box in the safety vault of the bank for her, and that his executor would deliver them to her after his death, adding that he had given them to her.

3. Same—Enforcement as a Parol Trust.—Nor can such a gift be enforced as a parol trust, no ten bonds being found in the box answering the description given.

JAS. S. PIRTLE, MAX I. GREENSTEIN for appellant.

HUMPHREY & HUMPHREY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Theodore Harris died a resident of Jefferson county in August, 1909. He left an estate worth $350,000 or $375,000. By his will, which was duly admitted to probate, he devised to each of his children an annuity of $1,200 a year; the remainder of the estate he devised to certain trustees as a permanent fund to aid in the building of Baptist churches. This suit was brought by Elcey Dick against the executors of the will to recover ten bonds of $1,000 each which she alleged the testator had given her, and had placed in his safety vault box in the Louisville National Banking Company to be delivered to her at his death. The allegations of her petition were denied by the defendants, and on final hearing of the case the circuit court dismissed the petition. The plaintiff appeals.

The facts shown by the record are these: Elcey Dick is in no way related to Mr. Harris. Her mother rented a part of his house on Fourth street in Louisville, and he occupied a part of the house. He was fond of the child, and when she was about four years old gave her some money to go across the street to a candy store to get some candy. As she was crossing the street she was

knocked down by a bicycle and her back was injured. Mr. Harris regarded himself as the innocent cause of the accident. He had the child treated by physicians and paid her much attention. For a while her health improved, but finally tuberculosis of the spine developed and for two years before his death she had become a helpless invalid. He was much attached to her and frequently visited her, taking an affectionate and fatherly interest in her.

While these facts are shown by a number of witnesses, the facts as to the ten bonds are proved only by Elcey Dick and her mother. The circuit court sustained exceptions to Elcey Dick's testimony. This was proper, for under section 606 of the Code she cannot testify for herself concerning any verbal statement of or transaction with the testator. (Overbeck v. Lecquire, 19 R. 164; Jones v. Jones, 102 Ky., 450.) This leaves her mother, Mrs. Belle Dick, the only witness in the case as to the alleged gift of the ten bonds. Her testimony put in narrative form is as follows: Harris when at her house said to her daughter: "Elcey, I put ten $1,000 bonds in the Louisville National Banking Company drawing 5 per cent interest for you." He said the bonds and the will were together in his safety vault box. I said, "What steps will be taken in getting the bonds?" He said, "No steps are necessary, my executor will notify you." I asked him why it was not in his will. He said, "My will may be contested and in that case Elcey would have to wait a long time for her money." This was in July, 1907, after his will was made. He told me if I would come down to the bank he would show the bonds to me. The next day I went to the bank and he got up and walked down the steps and got the bonds and showed them to me. They had a rubber band on them. He said they were for Elcey. After he showed them to me I said, "Do you think she will ever get them?" He said, "Why certainly she will. I feel that I am responsible for Elcey's condition, and I could not rest easy unless she was provided for." On another occasion she testified he told Elcey the bonds were there and that they were drawing five per cent interest. She said, "Why, whose getting interest on the money?" He said, "The interest is unpaid; for as long as I live Elcey will need nothing and the longer I live the more money she will have." He said that Elcey now had $1,000 and said to Elcey, "Your accumulated interest will buy your mother anything she

wants." She also testified that a few days before Mr. Harris died she was talking of quitting keeping a boarding house, and said she would do so, but hadn't any means to live on, and he said, "Well, I will take the accumulated interest on Elcey's bonds and put that on deposit for you," and then he said he would give her each month what her bonds were drawing, and I said, "Will you do that?" and he said, "Yes." But he died soon after this. He at no time told her what bonds they were; he only told her that the bonds drew 5 per cent. After Mr. Harris' death there were no ten bonds found together, apart from the others, in his box, nor was there any paper there directing any bonds to be delivered to Elcey Dick. There were a number of 5 per cent bonds in his box, but the interest coupons on all of them had been cut off as they matured. Mr. Harris had to his credit in the bank about $6,000 in cash at his death, and the executors declined to deliver to her any of the 5 per cent bonds which they found in the box. This suit followed.

In Walden v. Dixon, 5 T. B. Mon., 170, Walden on leaving Kentucky told Dixon he would leave his mare with him, and that if he did not return to Kentucky the mare should be his. Walden left the mare with Dixon and died without returning to the State. The court, holding that this was not a valid gift because Walden had not parted with control of the property, said:

"Whatever may have been intended therefore, by Walden in relation to this property, and howsoever willing he may have been that Dixon should have it, if he never returned to Kentucky, that intention cannot have the effect to pass the right of property from Walden to Dixon, because that intention has not been signified and declared according to the rules of law, established for the general safety and protection of property, against spurious and fraudulent claims by strangers."

In Throckmorton v. Grigsby, 124 Ky., 512, Grigsby, a bachelor about sixty years old, became very much attached to a twelve year old girl at whose father's house Grigsby made his home much of the time. He drew a check in her favor for $1,000 and also a will disposing of his estate in case he did not return. He went away and returned. He had in bank at the time only $400 and afterwards drew this out. Holding that there was no gift to the child of $1,000, this court, after referring to a number of authorities, said:

"From the facts as presented in this record it is evi-

dent that Grigsby had a great fondness for appellant and desired to give her a portion of his estate; but, unfortunately for her, he did not accomplish his purpose in a way so as to make it binding upon himself or his estate.''

In Stark v. Kelley, 132 Ky., 376, where the same question was again before us, we said:

''To constitute a gift inter vivos, the property must be delivered absolutely, and the gift must go into immediate effect. Where future control over the property remains in the donor until his death, there is no valid gift inter vivos. * * * * * * * * But it is insisted that the gift may be sustained as a gift causa mortis. A gift causa mortis exists where the property is given by the donor in his last sickness, or in other imminent peril. It takes effect only in the event of his death by the existing disorder or peril.''

The question was again before us in Foxworthy v. Adams, 136 Ky., 403. There, upon facts not unlike those shown here, we said:

''The rule is that to constitute a valid 'gift inter vivos, there must be a gratuitous and absolute transfer of the property from the donor to the donee, taking effect immediately and fully executed by a delivery of the property to the donor and acceptance thereof by the donee. Gifts inter vivos have no reference to the future, but go into immediate and absolute effect. Thus, a gift of property, to take effect after the donor's death, the donor in the meantime retaining the control and dominion of the property, cannot be sustained. The delivery must be absolute. All gifts that are not to take effect at once are void.''

It is insisted for appellant that Harris constituted himself trustee for Elcey Dick of the ten bonds, and that the delivery of the ten bonds to himself as trustee was sufficient to create a trust in himself. (See Pomeroy's Equity, Sec. 997 and Notes; Williamson v. Yeager, 91 Ky., 286; Krankel v. Krankel, 104 Ky., 745; Malone v. Lebus, 116 Ky., 976.) In Roche v. George, 93 Ky., 609, however, it was said:

''We think to establish a trust by parol, the chancellor should require certain and undoubted testimony, and when it is conflicting in its character and such as to leave in the mind of the court a rational doubt as to the act of the testator by which the transfer is claimed to have been made, the chancellor should deny the relief.''

The evidence in this case is not certain either as to

the subject matter of the trust or as to the existence of
the trust itself. What ten bonds were referred to in the
conversation to which Mrs. Dick testifies no one can tell.
If testimony such as we have here is sufficient to establish
by parol a trust by the donor to hold the property for
another, the rule that a gift to be valid must be followed
by a delivery of the property, would be of little value;
for in nearly every case declarations such as we have
here could be shown to create a parol trust although the
alleged donor had not parted with the possession of the
property or surrendered his control over it. In this case
the decedent cut off all the coupons from his bonds; he at
no time set apart any money for Elcey Dick or did any
act from which we can know that he held any part of his
estate as trustee for her. He may have intended to pro-
vide for her, and perhaps would have done so, had he not
died suddenly, but that he did not do so on the evidence
here shown must be held, unless we are to abandon the
rule that a gift is invalid so long as the giver retains pos-
session and control of the property. In all the cases
where the parol trust has been upheld, the proof was
clear and explicit as to the precise property and the
nature of the trust; and there were in each of these cases
peculiar facts taking it out of the rule as to incomplete
gifts. The common law rule on the subject seems to us a
wise one and sound public policy requires that exceptions
should not be made to it on the ground that a parol trust
was created, where, as here, the proof simply shows an
incomplete gift. A disposition of property which is to
take effect at the owner's death, is in its nature testa-
mentary, and can only be made by a will executed with
the formalities provided by the statute. To sustain a
parol trust on such evidence as we have here would be to
defeat the evident purpose of the statute.

Judgment affirmed.