## Kelley-Koett Manufacturing Company, et al. v. Goldenberg.

(Decided October 31, 1924.)

### Appeal from Kenton Circuit Court
(Criminal, Common Law & Equity Division).

1. Evidence—Corporate Meetings Admissible, but Not Conclusive, and May be Varied by Parol.—Corporate records, when properly authenticated and presented, are admissible both in favor of and against corporation and its stockholders or members, but are not conclusive, and minutes of meeting are only prima facie evidence of proceedings, and parol testimony is admissible to show what actually occurred, in absence of facts calling for estoppel.

2. Gifts—Delivery Essential Element of Gift Inter Vivos.—Delivery is essential element of gift inter vivos.

3. Gifts—"Delivery" May be Actual or Constructive.—"Delivery" of gift inter vivos may be actual or constructive, but in either event is parting of dominion over property included in gift from donor and placing it with donee.

4. Gifts—Intention to Make Gift will Not Complete it.—Mere intention to make gift will not suffice to complete it, howsoever strong and emphatic that intention may be expressed.

5. Specific Performance—When Not Fully Executed, there is no Valuable Consideration to Support Enforcement.—Gift not fully executed by delivery cannot be enforced, because there is no valuable consideration.

6. Gifts—Vote to Issue Stock Held Not Gift when there was no Delivery.—Vote of directors to issue share of stock to employee held not a gift thereof to employee, where incomplete certificate remained with blank certificates, and was afterwards canceled; there being no delivery.

7. Appeal and Error—Where Chancellor Directed Verdict, Finding of Fact was One Made by Chancellor Reviewable on Appeal.—Where issue out of chancery was ordered, and chancellor directed verdict, case became one where chancellor himself found facts, and is reversible on appeal upon same principle that such judgments are reviewed.

JOHN D. CARROLL and MYERS & HOWARD for appellants.

FREDERICK W. SCHMITZ for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, Anna Goldenberg, was employed in March, 1906, by the appellant and defendant below, Kelley-Koett Manufacturing Company, a corporation, as stenographer and bookkeeper. It was then doing a small business with only an authorized capital stock of $15,000.00, all of which was owned by the four individual defendants and appellants, J. Robert Kelley, Albert B. Koett, E. L. Pieck and Ben Bramlage. Kelley was its president and Bramlage was its secretary and treasurer. A short while after plaintiff's employment, a regular bookkeeper was employed by the company and who seems to have assisted in those duties from the begining of her employment. It, furthermore, appears from the great preponderance of the testimony that the duties of plaintiff were not materially added to at any time during her employment, which terminated by her voluntary resignation in April, 1909, although those duties did to some extent increase in quantity as the business of the company likewise increased.

Plaintiff filed this equity action in the Kenton circuit court against defendants (the corporation and its stockholders and directors) to obtain a judgment against the corporate defendant adjudging her to have been the owner of one share of its capital stock from October 17, 1907, when she says it was voluntarily given to her partially because of increased work, and for an accounting as such stockholder from that time, and for a judgment against it for the increased value of the stock from then, she alleging, and which was true, that the capital stock had been largely increased and dividend stock issued to the stockholders as well as cash dividends paid them, until the share given to her had more than sextupled in value. The answer was a denial, with a plea of limitation, which was appropriately controverted. An issue out of chancery was ordered to try the controverted fact of the gift of the original share claimed by plaintiff, and after the testimony was all in the court sustained plaintiff's motion to peremptorily direct the jury to return a verdict in her favor, which was done, followed by a judgment that plaintiff recover 8½ shares of the corporate defendant's stock, but required her to pay therefor six hundred and odd dollars after crediting that sum with the cash dividends which had been paid per share from the time of the alleged gift, and such payment the court directed should be made by a note executed by plaintiff to defendant. In plaintiff's petition she averred that the defendant "gave and sold to her" the share of stock, but her testimony was directed exclusively and entirely to a gift of it to her, and we shall treat the appeal alone from the standpoint of a gift.

Before we take up that question, it might be well to notice the point, strongly pressed before us, that the gift of the share of stock as claimed by plaintiff was in open violation of section 193 of the Constitution and statutes enacted pursuant thereto forbidding a corporation to issue its stock "except for an equivalent in money paid or labor done, or property actually received and applied to the purposes for which such corporation was created," ets., and the cases of Bennett v. Stuart, 161 Ky. 264, Mayfield Water and Light Co. v. Graves County Bank, 170 Ky. 56; Jones v. Bowman, 181 Ky. 722; Taylor v. Citizens Oil Co., 182 Ky. 350, and Rice v. Thomas, 184 Ky. 168, are relied on to sustain that contention. We are, however, not altogether satisfied of the applicability of the section of the Constitution and the doctrine of

those cases to the facts of this one, since the stock here involved was conceded to be dividend stock, the *quid pro quo for* which the corporation already possessed in the way of earnings, and it is extremely doubtful to our minds if the section of the Constitution and the cases relied on apply to a transfer of that character of stock. No doubt the purpose of the section was to forbid the issual of original stock or the increase of such stock and for which it did not have as a part of its assets an equivalent in value unless such equivalent was paid therefor, the intention being to prevent the appearances of assets by the corporation when they did not actually exist. It would seem, therefore, that when the equivalent in value was already possessed by the corporation, as it was in this case in the shape of earnings, the reason for the application of the section would cease. However, because of our conclusions hereinafter expressed, we do not deem it necessary to determine that question, and for the purposes of this case we will dismiss it without adjudication.

Returning now to what we consider the decisive question upon the merits, the testimony of plaintiff was, in substance, that prior to October 17, 1907, she had some talk with the president of the company about further increasing her salary, which had already been done to the extent of $2.00 per week, but there was never any agreement or promise that any such increase would be made. On that day the board of directors, who were all the stockholders, had a meeting upstairs over the office of the company. When it was over the secretary and treasurer, Mr. Bramlage, approached plaintiff in the office and told her that "we have decided to give you a share of stock for what you have done for us." She says that she thanked him and that he went to the safe and took out the stock certificate book and filled in a blank stock certificate to her for one share of the capital stock of the par value of '$100.00; that he incorrectly wrote her name as "Emma Goldenberg" when the proper one was "Anna Goldenberg," and that he then filled another certificate in which he put her proper name; that he signed that certificate as secretary and treasurer, but it was neither then nor thereafter signed by the president of the company, and the certificate remained thereafter in the stock book unsigned by the president and undetached from the stub; that a few days thereafter she had a conversation with the president in substance the same with reference to the giving of the share of stock, but that he declined to sign

it on the ground that he objected to the gift of another share of stock to a Mr. Crockett, who was a son-in-law of another stockholder, and he did not do so, nor did he nor the plaintiff have that certificate of stock or the stock book in their possession at the time, it being at its regular place of deposit in the safe. It, furthermore, appears that the bookkeeper, who did not attend that meeting of the board of directors, afterwards wrote up the minutes of the proceedings and in which it was stated that one share of the dividend stock had been agreed to be issued to plaintiff and one to Crockett, while all the other stock agreed to be issued at that meeting was distributed among the stockholders according to the stock they possessed. Those minutes were never signed by the president of the company and which he declined to do because they showed a gift of the stock to the plaintiff and to Crockett. At the next meeting in January, 1908, it was recited in the minutes of the proceedings that the prior proceedings of October 17, 1907, were read and approved, but because of that recitation neither the secretary and treasurer nor the president would sign the minutes of that last meeting and they were never signed. Plaintiff continued in the service of the corporate defendant from that time till her resignation, one year and five months, and never said a word thereafter about the share of stock, nor did she attend any stockholders' meeting or claim the right to do so, nor did she demand her share of the earnings of the company and left her employment on her own volition because, as she says, she was not sufficiently remunerated. She lived in Covington, in which city was also located the office of the corporate defendant, and she does not claim to have ever mentioned the matter after her resignation until in August, 1911, when she says she wrote a letter to the president concerning the matter. She preserved no copy of that letter and the president and all of the officers and stockholders of the defendant company deny that they ever received any such letter, or any alleged letter from plaintiff except one written by her on September 24, 1918, in which she did not mention any of her alleged prior letters, but referred to and spoke of the original transaction in 1907, whcih she characterized as a gift of the stock to her and said: "I left this share of stock in the stock book along with the shares of the other stockholders, and through an oversight upon my part I did not take this share of stock when I severed my connection with your firm, and I pre-

sume through an oversight upon your part it wasn't offered to me at the time I left, nor have I received it or heard anything about it all these years. Of course I feel that I can have this share upon request, as I did not solicit its presentation in any way, but it was *given* to me for reasons above stated, that is, that was the statement made to me, and when I stop to consider how I put forth every effort to help make the business a success when it was in its infancy, how many hours I put in overtime, without even thinking of asking for compensation for such overtime, I feel that I surely earned this share. When can I expect this share, or shall I call for it?''

More than nine years had then elapsed since her connection with the company had ceased, and it was nearly eleven years since the alleged gift, during which time the success of the company had been phenomenal and its earned assets more than sextupled, and also during which time she resided in the same city with defendants.

The defendants contended at the trial and also contend here that the minutes of the corporate defendant relating to the alleged gift were and are incompetent because not authenticated in the manner provided by the by-laws, i. e., they were not attested by the officers whom the by-laws required should make the attestation. But, we do not deem it necessary, under the facts of the case, to spend time on the discussion of that question, since it is our conclusion, as will hereinafter appear, that there was never a completed gift of the share of stock claimed by plaintiff, even if we should accept the corporate records as absolutely regular in every respect. Proceeding upon that theory, defendants offered to prove by all of its officers, stockholders and its bookkeeper, the facts as to how the records of the corporation relating to the gift transaction were written as they now appear, and to thereby demonstrate that they were incorrect and did not speak the truth as to the actual occurrences at the meeting or meetings which they purport to record. By the bookkeeper, defendants offered to prove that he wrote the proceedings of the 1907 meeting at which the gift is alleged to have been recorded, and that he did so upon information furnished to him by Bramlage to the effect that there was a stock dividend declared of 50 per cent of the paid in capital and allotted to the stockholders in proportion to the stock held by them. Bramlage offered to testify to the same facts as communicated by him to the bookkeeper, and both of them offered to testify that

nothing was said about a gift of.a share of stock to plaintiff, and the bookkeeper also offered to testify that he got the latter information from his examination of the stock books in which, as we have pointed out, Bramlage had filled in two certificates, one to plaintiff and one to Crockett, but they were incomplete and were not delivered.   The court refused, on objection, to admit any of that testimony, as he also refused to admit similar testimony by all of the other directors and stockholders as to what transpired at the October, 1907, meeting, and in so ruling we are convinced that the court committed error.

Corporate records, when properly authenticated and presented, are admissible as competent evidence "both in favor of and against the corporation and its stockholders, or members, on questions relating to the creation and organization of the corporation, performance of charter or statutory requirements, corporate proceedings after organization, and other like matters." 14 C. J. 376, 7 R. C. L. 152-3. But they are not conclusive, and in the first mentioned publication, beginning on page 377, the text says that "Corporate books are not, as a general rule, conclusive either against the corporation or against its stockholders or members or directors or other officers. . . .   The minutes of corporation meetings and other like corporate records are only *prima facie* evidence of the proceedings, and parol testimony is admissible for the purpose of proving what actually occurred."   A number of cases are cited in note 58 to the text, including that of McIlhenny v. Binz, 80 Texas 1, 13 S. W. 655, 26 A. S. R. 705.   In the latter publication on page 154 the text says: "As a general rule, the records of the corporation are not conclusive even against the corporation," and many cases are cited in note 2, including City Electric Street Railway Co. v. First National Exchange Bank, 62 Ark. 33, 34 S. W. 89, 54 A. S. R. 282, 31 L. R. A. 535; and State v. Guertin, 106 Minn. 248, 119 N. W. 43, 130 A. S. R. 610.   There are recognized qualifications upon the conclusive effect of corporate records as is shown by the authorities referred to, one of which is that if a stranger has acted upon the faith of the truth and it would be to his detriment to allow the corporation to impeach the record by parol testimony it will not be allowed to do so, but that exception is in the nature of an estoppel and we have·no facts calling for its application in this case.   If such offered testimony in this case had been admitted, then the proof would have overwhelmingly shown

that there was never any gift to plaintiff by the corporation itself of the share of stock in contest and we would then be relegated to what occurred between her and Bramlage, as she testified to, and between her and Kelley, the president of the corporation, acting individually and not even in the apparent scope of their authority, for we take it that no one will contend that a corporate officer has apparent authority to give away its property. If, however, those officers acted within their authority, we are then confronted with the fact that, according to plaintiff's own testimony, which is not strengthened by any other that was introduced or heard upon the trial, there was never a completed gift to her of the share of stock.

The gift, if one, was one *inter vivos*, one of the essential elements of which is delivery of the given property by the donor to the donee. It is not our purpose to enter into an elaborate discussion of the different kinds of delivery or what is essential to constitute them, since it is our duty to confine this opinion to the facts of the case. It is sufficient to say that a delivery may be actual or constructive, but in either event it is a parting with dominion over the property included in the gift from the donor and placing it with the donee. There is nothing here smacking of what is known as a technically constructive delivery; and it is everywhere declared to be the law that a mere intention to make a gift will not suffice to complete it howsoever strong and emphatic that intention may be expressed. Therefore, as we have hereinbefore intimated, the minutes of the corporate defendant, if perfect in every respect, amounts at most to but the voice of the corporation expressing *an intent* to make the gift to plaintiff. And, since a gift not fully executed by delivery, cannot be enforced because there is no valuable consideration, the whole transaction at most "is a mere executory agreement to give, and the title does not pass." 28 C. J. 629; Goodan v. Goodan, 184 Ky. 79; Dick v. Harris, 145 Ky. 739; Foxworthy v. Adams, 136 Ky. 403, 27 L. R. A. (N. S.) 308; Ann. Cas. 1912A 327, and cases referred to therein. To the same effect is the text of 12 R. C. L. 932-3. But, plaintiff insists that Kelley agreed to keep the stock for her, which, however, he denies, but if it was true the cetificate of stock was never delivered to him for her because it remained in the possession of the corporation and at the place where the blank stock certificates were always theretofore deposited. Moreover, a fact which we had overlooked,

shortly after Bramlage filled in the certificate and after Kelley refused to sign it, the former cancelled it by running a line through his name and writing on its face the word "cancelled," and it remained in that condition for nearly thirteen years before the filing of this action.

We deem it unnecessary to further discuss the points involved by a continued lengthening of this opinion, since the principles involved are fundamental and universally recognized and applied. The contention of plaintiff that the certificate of stock in contest was delivered by the corporation to one of its officers as a trustee for her is not only denied by that officer but also by the subsequent silence and nonaction of plaintiff for the long period which it lasted, coupled with the fact that in the meantime the value of the stock had largely increased instead of diminishing, are potent facts to our minds to refute the contention of plaintiff and to establish that of the defendants.

This case was one, as we have said, brought in equity; the verdict of the jury, if not peremptorily directed by the court, would perhaps have been one only advisory to it. At all events, the court directed the verdict that was returned, which to all intents and purposes was a finding by the court of the essential fact for which the jury was impaneled to try. The case then, under those circumstances, becomes one where the chancellor himself found the facts and is reviewable in this court upon the same principles that such judgments are reviewed. Treating it as such, we are forced to the conclusion, even if we should concede many of the other contentions of plaintiff, that the court was in error in its finding of fact that there was a gift, and the judgment is reversed with directions to dismiss the petition.