# Martin v. Holian et al.

March 7, 1939.

JOHNST NORTHCUTT, Judge.

J. EDWARD BOLTZ and E. ERIC McLEFRESH for appellant. ROBERT C. SIMMONS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

In this litigation involving the ownership and proper division of the shares of capital stock of the Martin Hardware Company, a corporation, as between Thomas J. Martin and Thomas A. Holian, the chancellor has found from the evidence that the assets of the corporation are greatly in excess of $7,500 for which sum the corporation was originally capitalized; that since the corporation still technically exists, and for the purpose of determining the interests of the owners, that 75 shares of a par value of $100 each be taken as the basis for division. He adjudged that Thomas J. Martin is entitled to thirty-seven and one-half shares and that Thomas A. Holian is entitled to a like number. He fur-

ther adjudged and directed that they surrender the present certificates of stock held by them and that new certificates be issued for thirty-seven and one-half shares each. Plaintiff, Thomas J. Martin, is appealing.

As appears from the record, prior to March 11, 1915, appellant owned and operated a hardware store at Latonia. Due to depressed business conditions or other causes he was overtaken by financial difficulties and became indebted to his father-in-law, Mat Felton, in large sums and owed other indebtedness for which his father-in-law had become bound. In order to avoid loss to himself and apparently to save what he could out of the threatened wreck of the business for his son-in-law, Mat Felton procured appellant's consent that a corporation be formed to take over the business. At the urgent request of Mat Felton, appellee, another son-in-law, was induced to go into the corporation. According to the records, Albert G. Felton, a son of Mat Felton, and who was associated with him in business, subscribed for 37 shares of the capital stock of the corporation. After the corporation had been formed in conformity with the requirements of the statutes a meeting of the stockholders was held on March 11, 1915, at which Albert G. Felton was elected president, appellant vice president, and appellee, secretary and treasurer. At a subsequent meeting Albert G. Felton and appellee and appellant were elected directors of the corporation and at a meeting of the directors following the election and as shown by the minutes, appellant agreed to sell to the corporation his hardware business including stock, fixtures, accounts and all other assets for the sum of $5,300 on a condition that the corporation assume payment of all bills owing by him for merchandise, etc., the $5,300 to be paid as follows: $5,000 to Albert G. Felton, Mathew Felton, and the Felton Sons Company and $300 to be given appellant in stock of the corporation; that upon request of the Feltons and Felton Sons Company, the $5,000 due them was ordered credited upon the stock subscription of Albert G. Felton and Thomas A. Holian in the respective sums of $3,700 and $1,300 and that stock certificates be issued accordingly; that appellee be paid the sum of $15 per week for his services as secretary, treasurer and general manager of the corporation and that appellant be paid the sum of $15 per week for his services as salesman.

Up to and including May, 1918, two or three other

meetings of the directors were held but nothing that would throw any particular light on the controversy transpired at any of these meetings. The final meeting of the directors was held on November 20, 1931, at which time Albert G. Felton tendered his resignation as president of the corporation which was accepted and appellant was elected to fill the vacancy. The minutes of this meeting show that Albert G. Felton presented an assignment and transfer of the stock held by him in the corporation, transferring two and one-half shares to appellee and thirty-four and one-half shares to appellant and new certificates were ordered issued to them in accordance with the transfer.

Without going into the intricate pleadings it is sufficient to say that it is the contention of appellant that he is the owner of thirty-seven and one-half shares of the capital stock which is paid up and that appellee is the owner of only fifteen and one-half shares; that appellee cannot be considered an equal owner in the corporation unless and until he pays for the additional twenty-two shares. On the other hand it is the contention of appellee that under the agreement of all parties concerned when the corporation was formed the corporation was to continue as it was organized until all corporate indebtedness had been paid and then he and appellant were to be equal owners of the corporation and the 37 shares issued to and held by Albert G. Felton were issued to and held by him in trust for the purpose of effecting an equal distribution of the stock between appellant and appellee; that Albert G. Felton under the belief that appellee owned thirty-five shares and appellant three shares transferred to appellant thirty-four and one-half shares and to appellee two and one-half shares.

Mat Felton died before this litigation arose. As we infer from the evidence the purpose of Mat Felton in having the business incorporated was to put a limit upon liabilities that might be incurred and also that he might have supervision and control of it. As revealed by the few meetings of stockholders and directors the business was regarded by all more in the nature of a partnership than a corporation. However, it was conducted more as a sole corporation in that Mat Felton was regarded as the real owner and the others deferred to him in all matters.

The original certificate issued to appellee for thir-

teen shares had been changed by him on its face to show thirty-five shares. He said he did this at the direction of Mat Felton to conform to the original agreement and understanding and there is substantial evidence to show such was the agreement and understanding of all parties. The minutes of some of the stockholders' meetings show that seventy-five shares were voted. Albert G. Felton testified positively that at the last meeting of the directors when his resignation as president was tendered and accepted and he assigned the shares held by him in trust in order to effect an equal division of stock between appellant and appellee, he stated to them that appellant held three shares of stock and appellee thirty-four shares and asked them if that was right; that both agreed that it was and he thereupon transferred the stock to them as above indicated. The evidence for appellee strongly conduces to show, and in fact is practically conclusive, that at the time the business was incorporated appellant's liabilities were largely in excess of his assets. The evidence of appellee and Albert G. Felton is to the effect that appellant and appellee were to take charge of the business for equal salaries and to pay off the indebtedness and when that was done they were to own it share and share alike. Appellant's evidence indicates there was no such agreement, but that appellee was to receive the shares issued to him as a gift or inducement to him to go into the corporation and assist in conducting its business.

It is argued by counsel for appellant that one subscribing for capital stock of a corporation is required to pay the par value thereof and that appellee has not paid for twenty-two shares which he claims to own. So far as the weight of evidence discloses he and appellee are on the same footing in that respect. He had nothing to begin with because his liabilities exceeded his assets and both he and appellee were to contribute their time and efforts to the business of the corporation and to pay its liabilities in order to receive the stock; and in this connection it may be said that with the advice and financial help of Mat and Albert G. Felton their efforts have met with admirable success since the evidence discloses a balance of assets over liabilities far in excess of the authorized capital stock of the corporation.

It is further argued by appellant that the records of the corporation cannot be varied by parol evidence except in cases of fraud and then they must be directly

attacked for that purpose and not collaterally. Ample authority is cited in support of this contention and generally speaking it may be accepted as correct. Appellant admits that Albert G. Felton held the thirty-seven shares in trust. There is nothing, however, in the records of the corporation to show that these shares were in fact held in trust. It is merely shown that Felton subscribed for and that a certificate for thirty-seven shares was issued to him. Therefore, since not evidenced by writing it was necessarily a parol trust. A parol trust of necessity must be established by parol evidence. See Roche v. George's Adm'r, 93 Ky. 609, 20 S. W. 1039, 14 Ky. Law Rep. 584; Rudd v. Gates, 191 Ky. 456, 462, 230 S. W. 906. The purpose and intent of such a trust may be shown by parol evidence. Huff v. Fuller, 197 Ky. 119, 246 S. W. 149. The parol trust was a part of the agreement and understanding between the parties and one of the moving considerations for the formation of the corporation and the continuing of the business and it was so connected with and related to the corporation and the carrying out of the agreement between the parties that the evidence as to the one necessarily involved evidence as to the other.

But wholly apart from any consideration of the trust it is to be doubted that if in the proven circumstances concerning the conduct of the corporation and the state of a few corporate records kept whether a court of equity would be bound by the strict rule of evidence contended for by appellant.

It is our conclusion that in the circumstances parol evidence was admissible and there is ample and competent evidence to sustain the chancellor's finding.

Judgment affirmed.