# In re INDEPENDENT DISTILLERS OF KENTUCKY.

### No. 12646.

District Court, W. D. Kentucky, at Louisville.

Sept. 10, 1940.

Garland R. Hubbard, of Louisville, Ky., for W. O. Stiles.

Victor Kelley, of Bardstown, Ky., for C. E. Keith estate.

J. Smith Barlow, Jr., of Bardstown, Ky., and Woodward, Dawson & Hobson, of Louisville, Ky., for trustee.

MILLER, District Judge.

This matter is before the Court on separate petitions of W. O. Stiles and C. E. Keith to review an order of the Referee in Bankruptcy entered on August 5, 1939, sustaining the objections of the Trustee of Independent Distillers of Kentucky, a Michigan corporation, to their respective claims of Thirty Thousand ($30,000) Dollars and Five Thousand ($5,000) Dollars against the bankrupt estate. The two claims involve similar questions of fact and law, and will be considered together.

The Independent Distillers of Kentucky, a Kentucky corporation, was organized by a Detroit syndicate and was incorporated in October, 1933. On March 12, 1935, there was issued to C. E. Keith Certificate No. 6 for one hundred and fifty (150) shares of the common stock of the corporation, of the par value of One Hundred ($100) Dollars per share. On April 6, 1935, there was issued to W. O. Stiles Certificate No. 8 for five (5) shares; and on October 15, 1935, there was issued to W. O. Stiles and Elmer B. O'Hara, as tenants in common, Certificate No. 11 for five hundred and seventy-five (575) shares. The interest of Stiles as evidenced by the two certificates was two hundred and ninety-two and one-half (292.5) shares. It is not clear what consideration, if any, was given by Keith or by Stiles for the stock so issued in their respective names, but the following facts have a pertinent bearing upon the question:

On March 12, 1935, the corporation, through its president, negotiated a mortgage loan of Forty Thousand ($40,000) Dollars, made up of Fifteen Thousand ($15,000) Dollars loaned by Keith; Fifteen Thousand ($15,000) Dollars loaned by the Farmers Bank & Trust Company, of Bardstown, Kentucky, and Ten Thousand ($10,000) Dollars loaned by Alice M. Hergiton, of Detroit, Michigan. At the same time the corporation issued four hundred

(400) shares of stock at a total par value of Forty Thousand ($40,000) Dollars, which was apparently distributed as a premium in connection with the execution of the loans in question. The Court finds that one hundred and fifty (150) shares of this stock was the stock issued to C. E. Keith and represented by Certificate No. 6, of March 12, 1935, above referred to. Stiles owned the distillery site before the company was incorporated which he had purchased for Five Thousand ($5,000) Dollars. The corporation purchased this property from him for Fifteen Thousand ($15,000) Dollars, of which 'Five Thousand ($5,000) Dollars was paid in cash. Stiles claims to have performed numerous services for the corporation in connection with its financial difficulties and in negotiating the Forty Thousand ($40,000) Dollar loan, above referred. The Court finds that Stiles received his stock interest in the corporation for these services and for the balance of the purchase price of the land, and that he did not pay any cash consideration to the corporation for the stock issued to him.

In the spring of 1936 the corporation realized the necessity of raising additional capital by the sale of common stock to the public. It was considered advisable to qualify under the laws of Michigan and to form a new corporation under the laws of that state. Accordingly, on April 16, 1936, there was incorporated under the laws of Michigan another corporation by the identical name, viz: Independent Distillers of Kentucky. The authorized capital stock was five hundred thousand (500,-000) shares of common stock of the par value of One ($1.00) Dollar per share. The Kentucky corporation subscribed to three hundred and twenty-five thousand .(325,-000) shares, and was the only incorporator, as permitted under the laws of Michigan.

There was introduced in evidence (over the objection of Stiles and Keith) a loose leaf book purporting to be the minute book of both the Kentucky and Michigan corporations, containing minutes of stockholders' and directors' meetings of the two corporations, duly signed by officers of the respective corporations. The authenticity of the book or its contents was not proven. There was included in the book what purported to be the minutes of a meeting of the stockholders of the Kentucky corporation, held on April 8, 1936, which duly recited those present in person and by proxy,

including both C. E. Keith and W. O. Stiles as being present in person. The minutes contained this paragraph: "It was resolved that the Independent Distillers of Kentucky, Inc., transfer all of its assets to a new corporation to be organized in the State of Michigan, to be known as the Independent Distillers of Kentucky, a Michigan corporation, which said new company was to purchase the entire assets of the company and pay therefor by issuing 325,000 shares of stock of the Independent Distillers of Kentucky, a Michigan corporation, with the par value of $1.00 each, to the present stockholders of the Independent Distillers of Kentucky, Inc., on a. pro-rata basis."

The minutes also recited that a resolution offered by Mr. Pletsch, the President, and supported by Mr. Keith, was unanimously adopted, authorizing Edward Barnard, a Detroit attorney, to organize the proposed Michigan corporation; and that a resolution offered by Mr. Stiles, and supported by Mr. O'Hara, was unanimously carried, authorizing the officers of the corporation to make application to the federal government for transfer of the basic permit from the Kentucky corporation to the Michigan corporation, and for a change in the form of permit pertaining to the warehouse of the distillery. It is the contention of both Stiles and Keith that they were not present at this meeting and did not consent to the sale of the assets by the Kentucky corporation to the Michigan corporation, and that the minutes offered in evidence stating their presence should be excluded because no evidence was introduced to prove their authenticity.

On December 16, 1936, the Independent Distillers of Kentucky, the Michigan corporation, entered into separate written contracts with Stiles and with Keith, each contract being executed in the name of the corporation by Rupert Pletsch, President. By the contract with Stiles the corporation agreed to pay Stiles on or before ninety days the sum of Thirty Thousand ($30,000) Dollars cash in consideration of which Stiles did "sell and assign to second party all his shares of capital stock in the Independent Distillers of Kentucky, Incorporated, a Michigan corporation, and in Independent Distillers of Kentucky, a Kentucky corporation, and does hereby agree to release the party of the second part from any, all and every obligation which may be due him at this time by second;

party, or obligations of every description owing him by second party, and upon the payment of said sum to him by second party, or anyone for it, will release the second party therefrom, and this includes first party's right to stock in second party corporation, and to forever release and discharge the second party or its successors or assigns from all debts, claims, demands, actions and/or causes of actions and causes whatsoever of every description, either direct or indirect, accrued or which may accrue to him from second party." The contract with Keith embodied the same language, except that the agreed consideration to be paid Keith was the sum of Five Thousand ($5,000) Dollars. The payments were not made by the corporation to either Stiles or Keith but were extended from time to time by written agreements between the corporation and the respective sellers.

Both Stiles and Keith have filed, in support of their respective contracts, a signed certificate of Harry Wolff, Secretary of the Michigan corporation, which reads as follows:

"At a meeting of the stockholders and directors of the Independent Distillers of Kentucky, Inc., held at the office of the company, 6645 Gratiot Avenue, Detroit, Michigan, on the 28th day of November, 1936, all stockholders and directors being present. A resolution was offered by Harry Wolff, and supported by Grant W. Hatcher, authorizing the corporation to purchase from the proceeds of stock sales the stock interest of W. O. Stiles and C. E. Keith for the sum of Thirty-five Thousand ($35,000) Dollars. This resolution was unanimously adopted.

"I hereby certify that this is a true copy of a resolution adopted November 28, 1936, at a stockholders' meeting of the Independent Distillers of Kentucky, Inc., a Michigan corporation. (Signed) Harry Wolff, Secretary."

The above resolution was not contained in the minute book of the corporation, nor did Harry Wolff testify as to its authenticity.

By deed dated November 20, 1936, and duly recorded on December 5, 1936, the Independent Distillers of Kentucky, a Kentucky corporation, conveyed the real estate with the distillery thereon to the Independent Distillers of Kentucky, a Michigan corporation. The Michigan corporation went into bankruptcy on June 21, 1938, at which time it had not paid to either Stiles or Keith any part of the consideration provided for in their respective contracts of December 16, 1936. Stiles filed proof of claim against the bankrupt estate in the sum of Thirty Thousand ($30,000) Dollars, and the Executor of Keith, who had died in the meantime, filed proof of claim against the bankrupt estate in the amount of Five Thousand ($5,000) Dollars, both claims being for the unpaid purchase price called for by their respective contracts. The Trustee in Bankruptcy objected to their allowance, which objections were sustained by the Referee. Stiles and Keith have filed their respective petitions for review of these rulings of the Referee.

The Trustee contends that Stiles and Keith are stockholders of the bankrupt Michigan corporation, instead of creditors as claimed by them, in that upon the consummation of the sale of the assets of the Kentucky corporation to the Michigan corporation they became stockholders of the Michigan corporation, and that the contracts of sale relied upon by them are invalid. Stiles and Keith contend that they were stockholders of the Kentucky corporation, but were never stockholders of the Michigan corporation; that when the Kentucky corporation proposed to sell all of its assets to the Michigan corporation, they did not agree to the proposed sale and were entitled to be paid by the Michigan corporation the market value of their stock in the Kentucky corporation under the provisions of Section 883b-3 of the Kentucky Statutes; and that the contracts of December 16, 1936, were in settlement of their claims against the Michigan corporation as non-assenting stockholders of the Kentucky corporation, and were valid obligations of the corporation.

■ The validity of the contracts is first attacked on account of failure of consideration. The Trustee contends that the stock issued to Keith and Stiles was issued without the consideration required by Section 193 of the Kentucky Constitution and Section 568 of the Kentucky Statutes, which provide in substance that no corporation shall issue stocks or bonds except for an equivalent in money paid or labor done or property actually received and applied to the purpose for which the corporation was created. It is further contended that, since the stock was illegally issued, it was valueless and furnished no consideration to

support the promise of the Michigan corporation to pay the amounts agreed upon. We do not agree with this contention. Even if we assume that the stock was illegally issued, its validity can not be attacked in a proceeding of this kind. The corporation issuing the stock can institute proceedings against the stockholders to have the illegal portion of the same cancelled. It is also possible for the creditors to maintain an action against the stockholder to recover the difference between the par value of the stock and the market price of the labor or the property received in consideration for its issuance. These appear to be the only available remedies. Taylor v. Citizens Oil Company, 182 Ky. 350, 206 S.W. 644; James v. Bosworth, 223 Ky. 1, 2 S.W.2d 1075.

In addition, it is by no means clear that all of the stock issued to Keith and Stiles was illegally issued. Stiles claims that the Kentucky corporation owed him Ten Thousand ($10,000) Dollars as the unpaid balance on the purchase price of the distillery site, and that he performed certain services which were of value to the corporation. The circumstances under which Keith received his stock are not definitely established, but it appears that he had some claim for services rendered in connection with the making of the Forty Thousand ($40,000) Dollar mortgage loan to the corporation. If the Michigan corporation wished to buy from Stiles and Keith their stock interest in the Kentucky corporation, whatever it might be, it had a right to do so at whatever consideration it thought proper. So long as its promise was supported by some consideration, it is immaterial how much or how little that consideration actually amounted to. Union Gas & Oil Company v. Wiedemann Oil Co., 211 Ky. 361, 277 S.W. 323; Robbins v. Robbins, 246 Ky. 411, 55 S.W.2d 31.

The Trustee next contends that the contracts of December 16, 1936, were invalid because they were executed in the name of the corporation by Pletsch, its president, without authority. It is settled law in Kentucky that the president of a corporation does not have by virtue of his office any general authority to execute all contracts on behalf of the corporation. In order to make such contracts valid obligations of the corporation, he must be authorized to execute the same by existing by-laws or by express authority of the Board of Directors, or his action must be of the kind that comes within the apparent scope of his employment. Caddy Oil Company v. Sommer, 186 Ky. 843, 218 S.W. 288; Seat v. Louisville & Jefferson County Land Company, 219 Ky. 418, 293 S.W. 986; Shields Construction Company v. Cowan, 270 Ky. 173, 109 S.W.2d 585. The by-laws of the Michigan corporation did not give the president the authority to execute this type of contract, nor in the opinion of the Court did it come within the apparent scope of the president's duties. The claims of Keith and Stiles against the Michigan corporation were of a very unusual nature and not connected with the current operation of the corporation in any way. Accordingly, the only authority which the president had to execute the same on behalf of the corporation was such authority as was conferred upon him by the alleged resolution of the Board of Directors of November 28, 1936. This resolution was not properly introduced in evidence in that it was not contained in the minute book of the corporation and its existence was not properly authenticated in any other way. A certificate of the secretary of the corporation that it was a true copy of a legally adopted resolution, without the secretary being offered as a witness, is not by itself enough to make it competent. Even if we assume that the resolution was actually passed and was properly introduced in evidence, the very terms of the resolution prevent the two claims under consideration from being allowed. The resolution authorized the corporation to purchase the stock interest of Stiles and Keith for the sum of Thirty-five Thousand ($35,000) Dollars "from the proceeds of stock sales". Although the actual contracts executed by the president do not contain any such limitation as to how the purchase price shall be paid, yet the validity of the contracts can rise no higher than the authority under which it was authorized when the parties contracting with the corporation had notice of such limitation of authority.

The two contracts of December 16, 1936, are invalid for a further reason. Unless Stiles and Keith were dissenting stockholders when the sale of the assets of the Kentucky corporation was made to the Michigan corporation, they later became, by operation of law, upon the consummation of that sale, stockholders of the Michigan corporation. Under the laws of Michigan a corporation can not legally purchase its own stock to the prejudice of its creditors even though they be creditors subse-

quent to the date of purchase. Clark v. E. C. Clark Machine Company, 151 Mich. 416, 115 N.W. 416; Stott v. Orloff, 261 Mich. 302, 246 N.W. 128. Stiles and Keith are accordingly forced to rely upon the contention that they were dissenting stockholders when the sale was made and that the contracts of December 16, 1936, were in the nature of releases of their claims against the Michigan corporation by reason of the provision of Section 883b-3 of the Kentucky Statutes. But the minutes of the stockholders' meeting held on April 8, 1936, show very clearly that they agreed to the sale instead of disagreeing. We recognize their contention that the minutes of a corporate meeting are only prima facie evidence of what happened at the meeting and are not conclusive against either the corporation or other parties. Kelly-Koett Manufacturing Company v. Goldenberg, 207 Ky. 695, 270 S.W. 15; Martin v. Holian, 277 Ky. 291, 126 S.W. 2d 465. The Martin case indicates that oral evidence contradicting written corporate records should be strong and conclusive before a court should reject the written record itself. The evidence in the present case is not definite enough and lacks the cumulative effect of testimony of other available witnesses to comply with this requirement. Stiles and Keith are, accordingly, bound by the minutes of the meeting of April 8, 1936, if they were properly admitted in evidence. Stiles and Keith objected to their introduction on the ground that the witnesses who made the records did not testify that they were made by them in the regular course of business. The Trustee in Bankruptcy merely testified that he found the book among the records of the company. It is the rule in Kentucky that corporate books and records are competent evidence of the facts contained therein when such records have been first properly authenticated. To make them competent the person who made the entries must be offered as a witness and the entries proven by him, if he is not dead or had not absconded or other sufficient reasons do not exist showing it is not practical to obtain his testimony. If such witness is not available, the books or records may still be made competent evidence when it is proven by the person who has charge of them that they were made contemporaneously with the transactions shown in them in the ordinary course of business by a person authorized to make them. Baskett, Nichols & Norment v. Rudy, 186 Ky. 208, 217 S.W. 112; Carter v. Vine Grove State Bank, 236 Ky. 191, 32 S.W.2d 973. This rule would apply in the present case and result in the minutes being rejected as incompetent evidence except for the acts of the Trustee in proceeding under Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The Trustee served on Stiles and on the Executor of Keith a written request that they admit that the minute book in question was kept in the regular course of business by the two corporations and that the minutes contained therein were the minutes of the meetings of the stockholders and directors of said respective corporations. The written denial under oath required by Rule 36, within ten days after service of the request was not made by the claimants. The facts accordingly stand admitted, and it was not necessary for the Trustee to authenticate the records when offered in evidence.

Stiles and Keith claim that the genuineness of the minutes had been previously denied under oath by their pleadings in the proceedings and that it was unnecessary to make another written denial under oath after the written request for admissions had been served on them. We do not agree with this construction of Rule 36, but believe that the rule requires an answer after the service of the request, regardless of what may have been previously asserted by the pleadings. The rule makes the procedure available after the pleadings are closed and pertains to the manner and necessity of proof of issues raised by the pleadings. See Van Horne v. Hines, D.C., 31 F.Supp. 346. The party asking for the admissions is entitled to a direct and unequivocal answer to his request in order to properly prepare his case, without being required to search the record for possible denials lurking in papers or instruments previously filed in the record. Also, pleadings which are sworn to frequently deny allegations of fact on account of lack of definite information available at the time, and later no attempt made to sustain the denial. The beneficial result of the rule would be largely lost if the party making the request was not permitted to rely upon the answer to or failure to answer the request after its service.

The orders of the Referee rejecting the two claims in question are approved.